**Max J. MARTIN, Plaintiff,**

v.

**CSX TRANSPORTATION, INC., Defendant.**

**No. IP01–0336–C Y/K.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 30, 2003.

Robert E. Harrington Jr., Harrington, Thompson, Acker and Harrington, Ltd., Chi-cago, IL, Douglas J. Webber, The Law Office of Doug Webber, Indianapolis, IN, for Plaintiff.

Bruce A. Hugon, Stuart & Branigin, Indianapolis, IN, for Defendant.

## ENTRY ON PLAINTIFF'S MOTION TO ALLOW EXPERT TESTIMONY·

BAKER, United States Magistrate Judge.

### I. Background

Plaintiff Max J. Martin was injured while working at Defendant CSX Transportation, Inc.'s ("CSX") Hawthorne Yard in Indianapolis. [Compl. ¶ 4]. On December 23, 2002, Martin disclosed Drs. John R. McCarrol, James Pease, Thomas N. Vahey, Joseph J. Kenney, L. Walsh, Ng Anastacio, and physical therapist Joanna McGill, as witnesses in his initial disclosures pursuant to Fed. R.Civ.P. 26(a)(2)(A). [Pl.'s Discl. of Wit., pp. 1–2]. Martin states in his Disclosure of Witnesses that the "above treating physicians, though not retained as experts, will offer opinion testimony at trial based on physician's treatment of plaintiff as well as the physician's education, training and experience concerning the nature and extent of plaintiff's condition, its cause, permanency, and pain and suffering associated with that condition as well as the necessity and cost of future medical costs. Said testimony is expected to be consistent with the medical records of each provider." [*Id.* at p. 3]. On December 30, 2002, CSX filed a motion to exclude any "expert" testimony from Martin's treating physicians. [Def.'s Mot. to Exclude, p. 1]. The Court found this motion to be moot in light of the Court granting the parties' motion to extend the Case Management Plan deadlines. [Docket No. 41].

On April 23, 2003, anticipating that CSX will again move to exclude Martin's physicians from testifying, Martin filed a motion to allow his treating physicians to provide opinion testimony regarding the cause and permanency of his injuries, pain and suffering associated with his condition, and the necessity and costs connected to future care. [Pl.'s Mot., ¶ 7]. CSX opposes this motion, contending that the nature of Martin's wit-

nesses' testimony requires expert reports according to Fed.R.Civ.P. 26(a)(2)(B). [Def.'s Resp., p. 1]. For the reasons set forth below, Martin's motion to allow expert testimony is GRANTED.

## II. Discussion

Fed.R.Civ.P. 26(a)(2)(B) requires a written report "with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Martin contends that his treating physicians were not retained or specially employed to provide testimony, but instead their opinion testimony will focus exclusively on his care and treatment. [Pl.'s Br., p. 7]. Conversely, CSX asserts that a written report is required of a physician when offering testimony as to the causation of an injury.[1] [Def.'s Resp., p. 2].

There is a split in authority on the approach courts utilize to determine the necessity of a written report for expert testimony from treating physicians. The majority of courts permit physicians to present their opinions formulated during the course of treating a patient. *See, e.g., McCloughan v. City of Springfield*, 208 F.R.D. 236, 242 (C.D.Ill.2002) (treating physicians may offer opinion testimony on causation, diagnosis, and prognosis without prerequisite of providing Rule 26(a)(2)(B) report); *Zurba v. U.S.*, 202 F.R.D. 590, 592 (N.D.Ill.2001) (it is common for a treating physician to consider patient's prognosis as well as the cause of patient's injuries); *Figueroa v. City of Chicago*, 2000 WL 520926, *4 (N.D.Ill.2000), *quot-*

ing *Richardson v. Consolidated Rail Corp.*, 17 F.3d 213, 218 (7th Cir.1994) (doctor is not an "expert" if his or her testimony is "based on ... observations during the course of treating"); *Garza v. Abbott Laboratories*, 1996 WL 494266, *1 (N.D.Ill.1996) (treating physician does not need to submit expert report if matters on which he testifies are within his personal knowledge).

A minority of courts have held that causation is beyond the scope of the testimony a treating physician may provide without tendering an expert disclosure report. *See, e.g., Kondziolka v. Burlington Northern and Santa Fe Railway Co.*, 2000 WL 1368041, *2 (N.D.Ill.2000) (opinion about the causation of current physical condition goes beyond personal observations, treatment and diagnosis); *Schoolman v. UARCO, Inc.*, 1999 WL 47124, *3 (N.D.Ill.1999) (testimony of doctor will be limited to the physical condition of the plaintiff); *Zarecki v. National Railroad Passenger Corp.*, 914 F.Supp. 1566, 1573 (N.D.Ill. 1996) (opinions as to ultimate causation and foreseeability are not derived solely from treatment or personal observations).

As noted above, District Courts within the Seventh Circuit have not adopted a uniform approach. This is in part because the Seventh Circuit has not squarely addressed this issue. CSX relies on *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994) for the proposition that a treating physician provides expert testimony when discussing causation of injuries, and thus must submit a report pursuant to Rule 26(a)(2)(B).[2] [Def.'s Resp., p. 2]. However, *O'Conner* is easily distinguished from the

---

1. CSX presents no evidence to indicate that the physicians' opinions were formulated specifically for litigation or that physicians were retained in anticipation of litigation.

2. CSX quotes footnote 14 in *O'Conner* to support the proposition that the Seventh Circuit "do[es] not distinguish the treating physician from other experts when a treating physician is offering expert testimony regarding causation." [Def.'s Resp., p. 2]. However, CSX fails to take into account the next sentence of the footnote that states "[Plaintiff] has not cited us any authority to the contrary." *O'Conner*, 13 F.3d at 1105, n. 14. In the case at bar, Martin presents ample support for his argument that treating physicians may be permitted testify as to causation. [Pl.'s Br., pp. 12–17]. *See, e.g., McCloughan*, 208

F.R.D. at 242 (court will follow the majority rule that treating physicians may offer opinion testimony on causation); *Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 298 (D.Nev.1998), *quoting Piper v. Harnischfeger Corp.*, 170 F.R.D. 173, 174–75 (D.Nev.1997) (treating physician's opinion on matters such as "causation, future treatment, extent of disability and the like" are part of the ordinary care of a patient, and a treating physician may testify to such opinion testimony); *Sprague v. Liberty Mutual Ins.*, 177 F.R.D. 78, 81 (D.N.H.1998) (majority of other courts in the country have concluded that Rule 26(a)(2)(B) reports are not required as a prerequisite to a treating physician expressing opinions as to causation).

case at bar because it addresses only the validity of a physician's methodology. Specifically, the doctor in *O'Conner* claimed to have the ability to diagnose cataracts induced by radiation merely by observation. *O'Conner,* 13 F.3d at 1106. The *O'Conner* court's analysis of admissibility examines the credibility of Plaintiff's physician's methods and procedures of science, not the extent to which a treating physician's testimony can extend before submitting an expert report under 26(a)(2)(B). *Id.*

■■■ Turning to the language of the rule, the Court finds that Rule 26(a)(2)(B) expressly limits its reach to those experts retained or specially employed. *See Hoover v. U.S.,* 2002 WL 1949734, *5 (N.D.Ill.2002) ("there are two sets of experts whose opinions may be presented at trial—those who are retained and those who are non-retained."). In the case at bar, it is undisputed that Martin's treating physicians are not specially employed to provide testimony. [Pl.'s Br., p. 4]. The anticipated opinion testimony of these physicians was formulated during the examination and care of Martin, not in anticipation of litigation. These uncontradicted facts weigh against the necessity of requiring an expert report. Further support for this conclusion is found in the Advisory Committee Notes regarding the 1993 amendments to Rule 26, which state that "[a] treating physician ... can be deposed or called to testify at trial without any requirement for a written report." *Monroe–Trice v. Unum Employee Short–Term Disability Plan* 2003 WL 68033, *1 (S.D.N.Y.2003), *quoting* Fed.R.Civ.P. 26(a) Advisory Committee Notes.

■■■ Based on the facts in the instant case, the Court finds that Martin's doctors' opinion testimony should be permitted without a written report. The nature of these opinions derives specifically from personal knowledge acquired through the course of treatment. It is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the

ordinary course of an examination. To assume otherwise is a limiting perspective, which narrows the role of a treating physician. Instead, to properly treat and diagnose a patient, the doctor needs to understand the cause of a patient's injuries. *See McCloughan,* 208 F.R.D. at 242 ("doctors do not operate in a vacuum.... Thus, the [c]ourt believes causation, diagnosis, and prognosis would be based on the treating physician's personal knowledge...."). As such, a physician "whose proposed opinion testimony will come from his knowledge acquired as a treating physician, is *not* someone from whom a Rule 26(a)(2)(B) report is required." *Sircher v. City of Chicago,* 1999 WL 569568, *2 (N.D.Ill.1999) (emphasis in original).

■■■ Additional support for allowing Martin's treating physicians to provide opinion testimony without the necessity of an expert report is found by examining the purpose of disclosure under Rule 26(a)(2). The purpose of disclosure is to provide opposing parties a reasonable opportunity to prepare for an effective cross-examination. *See* Fed.R.Civ.P. 26(a) Advisory Committee Notes. This purpose is preserved because Martin disclosed these potential witnesses as part of his initial disclosures and preliminary witness list. [Docket Nos. 22 and 35, Pl.'s Ex. C]. Discovery is ongoing, and CSX may depose those treating physicians if it desires to do so. CSX may use such depositions as an opportunity to obtain all the information that would need to be disclosed in an expert report and more. In fact, in this case Martin has granted CSX permission to conduct ex parte communications with these physicians. [Pl.'s Reply, p. 4]. The availability of these depositions, the production of Martin's medical records, and the opportunity to conduct ex parte interviews with these doctors should be more than sufficient even in the absence of an expert report. As a result, the Court finds that Martin's disclosure under Rule 26(a)(2)(A) provides sufficient opportunity for CSX to prepare for the testimony to be given by the treating physicians at trial.[3]

---

3. Because of Martin's timely disclosures, ongoing discovery, the production of Martin's medical records, and the opportunity to conduct ex parte interviews with Martin's physicians, the Court need not reach the issue of whether a treating

physician not specifically retained for litigation nevertheless must always produce an expert report. The safest (though perhaps not the most cost effective) approach for counsel seeking to elicit trial testimony from a treating physician

## III. Conclusion

Accordingly, Martin's motion to permit expert testimony is GRANTED.

So ordered.

that strays from the core of that treatment is to produce an expert report. Counsel always runs the risk that such testimony might have other evidentiary flaws that perhaps could have been revealed and corrected by an expert report.