Martha **GONZALEZ**, et al., Plaintiffs,

v.

**EXECUTIVE AIRLINES, INC. d/b/a American Eagle, Defendants.**

No. 04–2256 (JP).

United States District Court, D. Puerto Rico.

March 8, 2006.

Álvaro R. Calderón, Jr., San Juan, PR, for Plaintiff.

Diego A. Ramos, Roberto A. Cámara–Fuertes, Fiddler, González & Rodríguez, San Juan, PR, for Defendant.

### *OPINION AND ORDER*

PIERAS, Senior District Judge.

## I.  INTRODUCTION

Before the Court is the Defendant's motion in limine to strike a letter written by psychiatrist Dr. Edmundo Rivera, who is called as a witness in this case in his capacity as the Plaintiff's treating physician, and to compel Dr. Rivera to produce an expert report as per Rule 26 of the Federal Rules of Civil Procedure.  The Defendant contends that the letter, which accompanies the Plaintiff's medical records from the Orlando clinic where she was treated, is an attempt by the Plaintiff to introduce an expert report while skirting the requirements for the use of expert testimony stated in Rule 26 of the Federal Rules of Civil Procedure.

The facts leading to this conundrum are as follows:  On May 9, 2004, American Eagle flight 5401, on which Plaintiff Martha González was a passenger, made a hard landing at San Juan's Luis Muñoz Marín International Airport, causing severe damage to the airplane.  Plaintiff González is suing Defendant Executive Airlines, Inc., claiming that, due to the trauma she experienced during said hard landing, she has been suffering from the effects of Post–Traumatic Stress Disorder ("PTSD").

Plaintiff González does not intend to present an expert witness as part of her case. Instead, she intends to rely on the testimony

of Dr. Edmundo Rivera, her treating psychiatrist. As part of the discovery process in this matter, Plaintiff submitted a report filed by Dr. Rivera on his treatment of the Plaintiff. Counsel for the Defendant objected to the report, arguing that Dr. Rivera should be treated as an expert witness and therefore made to file a report compliant with the expert witness requirements set forth by Rule 26 of the Federal Rules of Civil Procedure. For the following reasons, the Court hereby **DENIES** Defendant's oral motion to compel Dr. Edmundo Rivera to file an expert report pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. However, the Court will accept as proposed evidence the Plaintiff's medical record from the clinic, but **STRIKES** Dr. Rivera's report from the record, because the Court finds is not a part of the record of treatment of the Plaintiff and rather a document prepared for the purposes of this litigation.

## II. ANALYSIS

### A. LEGAL STANDARD

Subdivision (a) of Federal Rule of Civil Procedure 26 was added to Rule 26 in 1993 in order to "accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives." Fed. R.Civ.P. 26(a) Advisory Committee's note to the 1993 amendments. Specifically, the Advisory Committee's notes state that subdivision (a)(2) "imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed.R.Civ.P. 26(a)(2) Advisory Committee's note to the 1993 amendments. Rule 26 places on litigants an affirmative duty to furnish, in advance of trial, the name of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses and to identify the subjects of the information. Fed.R.Civ.P. 26(a)(1)(A). The rule also establishes more stringent requirements in the case of wit-

nesses that are presented for the purpose of offering expert testimony. In addition to the requirements set forth in 26(a)(1)(A), Rule 26 requires the disclosure of the identity of "any person who may be used at trial to present evidence under Rules 702, 703, and 705 of the Federal Rules of Evidence the disclosure of a witness," Fed.R.Civ.P. 26(a)(2)(A), and requires that the disclosure of a witness who is retained or specially employed to provide expert testimony in the case be accompanied by a written report prepared and signed by the witness. Fed.R.Civ.P. 26(a)(2)(B). This provision was added to Rule 26 because "the information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was of little help in preparing for a deposition of the witness." Fed.R.Civ.P. 26(a)(2)(B) Advisory Committee's note to the 1993 amendments.

To further the goal of helping the parties to more efficiently prepare for trial, the written report required by Rule 26(a)(2)(B) must contain a complete statement of all opinions to be expressed and the basis and reasons therefor, the data or other information considered by the witness in forming the opinions, any exhibits to be used as a summary of or support for the opinions, the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years, the compensation to be paid for the study and testimony, and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Fed.R.Civ.P. 26(a)(2)(B).

### B. INTERPRETATION OF THE LAW BY THE COURTS

■ As the United States Court of Appeals for the First Circuit has held,

Rule 26 uses the term expert "to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters." Fed.R.Civ.P. 26(a)(2) Advisory Committee's note to the 1993 amendments. That definition does

not encompass a percipient witness who happens to be an expert. If the individual is not providing testimony under Rule 702, he is not an expert witness for the purpose of Rule 26. *See Id.*

*Gómez v. Rivera Rodríquez,* 344 F.3d 103 at 113 (1st Cir.2003) (Selya, J.). Furthermore, this Court supplements Rule 26 as a matter of course with the requirements set forth in its "Initial Scheduling Conference Call" ("ISC Call") which reminds the parties that "the Court firmly believes in the interplay of Rules 7, 11, 16, and 26 of the Federal Rules of Civil Procedure, which require increased lawyer responsibility coupled with a mandate to the Court to increase the level of judicial management and control of litigation." The Court's ISC Call at 11. The Court's ISC Call orders the parties to confer no later than twenty-one days prior to the Initial Scheduling Conference ("ISC") scheduled by the Court in order to coordinate the filing of the initial disclosures required by Rule 26(a)(1) of the Federal Rules of Civil Procedure, as well as to discuss settlement. The Court's ISC Call at 2–3.

The drafters of Rule 26 foresaw the possibility of confusion as to the applicability of the provisions of Rule 26 requiring expert reports, and the same is addressed in the Advisory Committee's notes to the 1993 amendments to Rule 26, which explain that

> [Rule 26] continue[s] to use the term "expert" to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters. **The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case** or whose duties as an employee of a party regularly involve the giving of such testimony. **A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.**

Fed.R.Civ.P. 26(a)(2) Advisory Committee's note to the 1993 amendments (emphasis added). As is stated in the advisory committee's notes, the expert report requirement imposed by Rule 26 is directed at witnesses retained or specially employed to provide testimony of the nature described in Rule 702 of the Federal Rules of Evidence.[1] *See Id.* The Advisory Committee notes specifically single out treating physicians as an example of witnesses that are not bound by the written report requirement. *See Id.*

The distinction drawn here is subtle but important, and it was relied upon without reservation by the First Circuit in the *Gómez* ruling, which held that Luis Piñot ("Piñot"),[2] a witness introduced by the defendants in that case, was a fact witness rather than an expert because he

> **was a direct participant in the events at issue,** and the record confirms that his testimony was offered to that end. **Like the testimony of a treating physician, Piñot's testimony would have been based on personal knowledge acquired before any litigation had begun. He was an actor with regard to the occur-**

---

1. Rule 702 of the Federal Rules of Evidence states that
   [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
   Fed.R.Evid. 702.

2. Defendant José A. Rivera Rodriguez, the Popular Democratic Party ("PPD") Mayor of the Municipality of Gurabo at the time of the facts at issue in *Gómez*, whose party had recently come to power, consulted Piñot, a known PPD member who was then the deputy secretary for legal affairs and norms for the Puerto Rico Department of Labor and Human Resources ("DLHR"), on the issues of law regarding the hiring of employees under Puerto Rico's Law 52, 29 P.R. Laws Ann. § 711c(a), a statute intended to create employment opportunities at the local level with the purpose of ameliorating unemployment. The parties in *Gómez* presented Piñot as a fact witness, but the District Court, concerned that his testimony was "in actuality that of an expert," excluded his testimony for failure to comply with the requirements of Rule 26 pertaining to expert witnesses. *See Gómez,* 344 F.3d at 112–113.

rences from which the tapestry of the lawsuit was woven, and the defendants sought to present his testimony on that basis.

*Gómez,* 344 F.3d at 113 (emphasis added).

The difference lies in the nature of the witness's involvement in the case and the nature of the testimony the parties intend for the witness to proffer, even, as in *Gómez,* regardless of the witness's partiality in a political discrimination case. Under Rule 26 and the interpretation thereof in the First Circuit's opinion in *Gómez,* a treating physician is an actor in the factual narrative of the case. In the instant case, Dr. Edmundo Rivera is the psychiatrist who allegedly has been treating Plaintiff González for the PTSD that she claims was caused by the hard landing of flight 5401. As such, in accordance with *Gómez,* he has functioned as a direct participant in the events at issue. His role can be best characterized, in the words of the First Circuit, as that of "an actor with regards to the occurrences from which the tapestry of the lawsuit was woven." *Id.* This interpretation of Rule 26 is not exclusive to the First Circuit. A variety of courts have ruled that a treating physician, testifying as to his consultation with or treatment of a patient, is not an expert witness under Rule 26. *See Id.; see also, e.g., Rogers v. Detroit Edison Co.,* 328 F.Supp.2d 687 (E.D.Mich.2004) (In a negligence action where the plaintiffs, while driving, were struck by an electrical cable, causing PTSD in the plaintiffs, the defendant argued that plaintiffs' treating physician should be compelled to produce an expert report. The court held that a treating psychiatrist called to testify only to matters learned during the scope of treatment did not have to file an expert report.); *Ngo v. Stand. Tools & Equip. Co.,* 197 F.R.D. 263, 266 (D.Md.2000) (In a products liability suit brought by a worker whose hand was crushed by defendant's automatic lift, the plaintiff and his counsel visited his treating physicians—who had examined the plaintiff twice in the past— in order to discuss the possibility of using him as an expert witness. During the visit, the doctor examined the plaintiff a third time. Because the doctor's opinion would have been adverse to his case, the plaintiff opted not to call him as a witness. The defendant, upon finding out about this third visit, decided to call the doctor as a fact witness, which plaintiff objected to on the grounds that the third visit had been made with the purpose of discussing retaining the doctor as a consulting expert. The court, finding that the facts showed that the third visit, where no agreement as to retaining the doctor as a consulting expert was reached, constituted a medical examination similar to the first two examinations, overruled the objection and allowed the introduction of the doctor's testimony only as to his notes regarding his examination of the plaintiff on the third visit, holding that a treating physician is "a hybrid witness for whom no Rule 26(a)(2)(B) disclosures are required" and can be "a fact witness for some purposes and a retained or consulting expert witness for other purposes."); *Mangla v. Univ. of Rochester,* 168 F.R.D. 137, 139 (W.D.N.Y.1996) (In a disability benefits case, the defendant subpoenaed the plaintiff's treating physician in order to extract testimony as to his examination, treatment, and diagnosis of the plaintiff. The doctor moved to have the subpoena quashed, or, in the alternative, to be paid expert fees. The court denied the motion, holding that a treating physician subpoenaed for the purpose of giving testimony solely on his care and treatment of the plaintiff was to be treated as an "ordinary witness" and not an expert.); *Sipes v. United States,* 111 F.R.D. 59, 61 (S.D.Cal.1986) (The plaintiff in a suit against the United States sought to bar the government's counsel from having access to his treating physician based a nonbinding 1975 advisory opinion of the Committee on Professional Ethics of the State Bar of California. The court, finding that Court finds that there was no federal common law physician-patient privilege that prohibited the government from contact with the plaintiff's treating physicians concerning the medical issues, held that "[i]t is improper to name treating physicians as expert witnesses where the information and opinions possessed by said physicians was obtained by virtue of their roles as actors or viewers of the transactions or occurrences giving rise to the litigation, to wit, the care and treatment

p@provided to the plaintiff during the pertinent time period."). In light of such rulings, the classification of treating physicians as witnesses not bound by the expert witness requirements of Rule 26 has become the generally recognized norm. *See, e.g.,* Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2031.1, n. 6 (2d ed. & Supp. 2004) ("A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.").

■ Because treating physicians are generally presented to provide testimony arising from their roles as actors in the events giving rise to the litigation, they are treated as fact witnesses and are not subject to the more stringent requirements that Rule 26 creates for expert witnesses, the essential point of analysis being the essence of the proffered testimony. *See Gómez,* 344 F.3d at 113, *citing Patel v. Gayes,* 984 F.2d 214, 218 (7th Cir.1993) (affirming, under the pre–1993 Federal Rules of Civil Procedure, the exclusion of expert testimony as to duty of care from treating physicians when they were not disclosed as experts).[3] So long as the witness "played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events," *Gómez,* 344 F.3d at 113–114, *citing Patel,* 984 F.2d at 217–218, a party need not identify a witness as an expert under Rule 26. *See also Musser v. Gentiva Health Servs.,* 356 F.3d 751, 756–57 (7th Cir.2004) (In affirming the district court's exclusion of the expert testimony of several treating physicians and nurses because the plaintiff failed to identify them as expert witnesses, the court held that "[e]ven treating physicians and treating nurses must be designated as experts if they are to provide expert testimony.") However, it therefore logically follows that for a treating physician not to be bound by the expert witness requirements of Rule 26, the physician's testimony must be closely constrained to the facts of the treatment administered and discussed in his notes taken at the time of his

examination. That is to say, a treating physician is not automatically exempt from the Rule 26 requirements for experts; rather, whether a treating physician will be required to file an expert report will hinge on the nature of the testimony he or she intends to proffer and the medical record and doctor's notes as of the time of his examination of the patient.

■ As the District Court of Kansas succinctly put it,

To the extent that the treating physician testifies only as to the care and treatment of his/her patient, the physician is not to be considered a specially retained expert notwithstanding that the witness may offer opinion testimony under Federal Rules of Evidence 702, 703 and 705. However, when the physician's proposed opinion testimony extends beyond the facts made known to him during the course of the care and treatment of the patient and the witness is specially retained to develop specific opinion testimony, he becomes subject to the provisions of Federal Rule of Civil Procedure 26(a)(2)(B). **The determinative issue is the scope of the proposed testimony.** (Emphasis added.)

*Wreath v. U.S.,* 161 F.R.D. 448, 450 (D.Kan. 1995); *see also Baker v. Taco Bell,* 163 F.R.D. 348, 349 (D.Colo.1995) (Plaintiff sought reimbursement of costs for taking the depositions of his treating physicians, for which the doctors had billed an hourly rate; the doctors had also billed the time they used to review their medical records at an hourly rate. The court denied the motion, holding that they were not entitled to bill at an hourly rate for the time spent as fact witnesses at a deposition or reviewing their medical records in anticipation thereof because treating physicians' opinions as to the cause of an injury based upon their examination of the patient or to the degree of injury in the future are a necessary part of the treatment of the patient and that such opinions do not make the treating physicians experts as defined by Rule 26(b)(4)(c).); *see also Mangla, supra,* at 139 ("Treating physi-

---

**3.** It should be noted that the Seventh Circuit recently noted that *Patel* was superseded by the 1993 amendments to Rule 26. *See Musser v.* *Gentiva Health Servs.,* 356 F.3d 751, 756 n. 2 (7th Cir.2004).

cians, however, testifying to their personal consultation with a patient are not considered expert witnesses pursuant to Fed.R.Civ.P. 26(b)(4)(c).").  Because they necessarily rely on their opinions as experts in treating patients, treating physicians are not bound by the expert report requirements of Rule 26 so long as they limit their testimony to those opinions they formed and relied on during the course of their examination and/or treatment of the patient.  *Wreath*, 161 F.R.D. 448, 450; *see also Baker*, 163 F.R.D. 348, 349.  Any opinions that they form outside of the context of their examination of the patient, however, constitutes expert opinion testimony and is subject to the more stringent requirements of Rule 26(b)(4)(c).

## C.  POST–TRAUMATIC STRESS DIS-ORDER

The plaintiff alleges that the treating physician in this case diagnosed her with post-traumatic stress disorder.  Because of its very nature, post-traumatic stress disorder is difficult for juries to understand from doctors' notes, and might necessitate the development of testimony through a more complete expert report.  Because of this situation, we discuss more fully the medical and legal intricacies of post-traumatic stress disorder as follows.

Because mental disorders such as post-traumatic stress disorder manifest themselves primarily in behavioral ways, the diagnosis of such disorders necessarily relies more heavily on the opinion of the treating physician than a more tangible malady, such as a bone fracture or an infection.  Therefore, at this point, the Court finds that it would be illuminating to examine the issue that lies at the root of the current controversy in this matter, which is the necessarily ephemeral nature of the diagnosis of the psychological disorder known as post-traumatic stress disorder ("PTSD").  PTSD is the designation assigned to a group of certain identifiable symptoms in the fourth edition of the *Diagnostic and Statistical Manual of the American Psychiatric Association* ("DSM–IV").[4]  *See* Nicholas J. Motherway,

*Post–Traumatic Stress*, 49 Am.Jur. Proof of Facts 2d 73 (West 2005).  It is a mental disturbance that originates in response to an overwhelming encounter with the possibility of violent death.  *Id.* PTSD symptoms may impair an individual's ability to cope, and they may interfere with the individual's routine activities and disrupt family harmony.  *Id.* The American Psychiatric Association began formally recognizing the PTSD diagnosis in 1980.  *See Bell v. Cone*, 535 U.S. 685, 705 n. 2, 122 S.Ct. 1843, 1855 n. 2, 152 L.Ed.2d 914 (2002), *citing DSM–IV* at 463–468.

Stress reactions have been noted and studied, generally focusing on military personnel, dating as far back to the American Revolutionary War, when Dr. Benjamin Rush, signer of the Declaration of Independence and writer of the first American preventive-medicine text for Army physicians, noted it in his work; the symptoms of what is now generally referred to as PTSD were known during the First World War as "shell shock" and were recognized to affect even those soldiers who did not fight on the front lines and those who did not suffer physical wounds.  *Id.* A variety of studies conducted in the 1970's on Vietnam War veterans led researchers to theorize that there was a common pattern of psychic reaction to traumatic events, and further studies bore out the conclusion that non-combat traumatic events such as concentration-camp internments, natural disasters, and violence tended to produce stress reactions in subjects.  *Id.*

According to the DSM–IV,

PTSD is a syndrome comprising three clusters of signs and symptoms: (1) repeatedly reexperiencing the trauma (Criterion B: e.g., intrusive recollections of the event, nightmares); (2) avoidance of activities and stimuli associated with the trauma and emotional numbing (Criterion C: e.g., difficulty experiencing positive emotions); and (3) heightened arousal (Criterion D: e.g., irritability, exaggerated startle reflex).  The disorder can only be diagnosed if a person has been exposed to an event

4.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. text rev.2000).

that qualifies as a "traumatic" stressor (Criterion A). The symptoms must persist for at least one month (Criterion E) and must cause distress or impairment (Criterion F).

Richard J. McNally, *Conceptual Problems with the DSM–IV Criteria for Posttraumatic Stress Disorder, in Post-traumatic Stress Disorder: Issues and Controversies* at 2 (G.M. Rosen ed.2004) (hereinafter "McNally"), *citing* DSM–IV (internal citations omitted).

Although debate about the diagnosis still persists, post-traumatic stress disorder has generally become accepted within the psychiatric and psychological community. "The existence of the DSM [IV] and its general acceptance in psychology indicate that PTSD has been exposed to objective scientific scrutiny and empirical verification." *Chapman v. State,* 18 P.3d 1164 (Wyo.2001), quoting *State v. Alberico,* 116 N.M. 156, 861 P.2d 192, 208 (1993). The diagnosis of PTSD has been accepted by other jurisdictions as evidence and as a reliable subject of expert testimony. *Chapman,* 18 P.3d 1164, 1172, *citing State v. Gettier,* 438 N.W.2d 1, 4–6 (Iowa 1989); *State v. Hall,* 330 N.C. 808, 412 S.E.2d 883, 889 (N.C.1992); *People v. Fasy,* 829 P.2d 1314, 1317 (Colo.1992); *State v. Alberico,* 861 P.2d at 208–9; *People v. Taylor,* 75 N.Y.2d 277, 552 N.Y.S.2d 883, 552 N.E.2d 131, 134–35 (N.Y.1990); *State v. Allewalt,* 308 Md. 89, 517 A.2d 741, 745–47 (Md.1986); *see also Mukamusoni v. Ashcroft,* 390 F.3d 110 (1st Cir.2004); *Davis v. Rennie,* 264 F.3d 86 (1st Cir.2001).

However, the Court here takes this opportunity to place more emphasis on the fact that there are still serious misgivings within the psychiatric community over the validity of the PTSD diagnosis. "Controversy has haunted the diagnosis of posttraumatic stress disorder (PTSD) ever since its appearance in the third edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM–III; American Psychiatric Association [APA], 1980) . . . [E]arly twenty-first century scholars are raising fresh questions about the syndromic validity of PTSD." McNally [5] at 1. This is reflected in the fact that the definition of the elements of the diagnosis has not remained constant over time and appears to be continually evolving. For example, in the DSM–III, published in 1980, Criterion A, dealing with the traumatic stressor that causally gives rise to the syndrome, defined a qualifying stressor was one "that would evoke significant symptoms of distress in almost everyone," elaborating that qualifying stressors, such as rape, combat, torture, and earthquakes, were those deemed to fall "generally outside the range of usual human experience." McNally at 2, *citing* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 236 (3rd ed.1980) (hereinafter "DSM–III"). In the DSM–IV, however, Criterion A requires that "the person experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others" and also requires that "the person's response involved intense fear, helplessness, or horror." DSM–IV at 427–428. The new definition of the stressor is clearly a broader one, causing some to worry that "if *any* event could qualify as a PTSD-inducing stressor, as long as it was perceived as traumatic, then the diagnosis would invite abuse in the courtroom." McNally at 3 (emphasis in original). The evidence would appear to bear this out, as a recent study has concluded that under the new definition, "the population's total life experiences that can be used to diagnose PTSD has increased materially by 59.2%." McNally at 4, *quoting* Naomi Breslau & Robert C. Kessler, *The stressor criterion in DSM–IV posttraumatic stress disorder: An empirical investigation.* 50 *Biological Psychiatry* 699 at 703 (2001). As Dr. McNally concludes, "despite nearly 25 years of research, the PTSD diagnosis remains contentious." McNally at 11.

## D. DISCUSSION

The issue of whether a treating physician should be bound by the expert witness re-

5. Dr. Richard J. McNally, of the Department of Psychology of Harvard University, served as a member of the DSM–IV PTSD Committee, participating in debate regarding the merits of changes in the criteria for the diagnosis.

quirements of Rule 26 is one that requires close analysis precisely due to the interplay between the skills and knowledge that would qualify the witness as an expert and his or her application of said knowledge and skills to the treatment of the patient. Though a party may call a treating physician merely in order to lay out fact testimony stemming directly from examination or treatment, there is no doubt that said physician relies on his or her expert knowledge in administering the treatment to the patient. It is presumably for this very reason that it is not uncommon for plaintiffs to announce their treating physicians as expert witnesses. In *Peña–Crespo v. Commonwealth of Puerto Rico*, 408 F.3d 10 (1st Cir.2005), a national origin discrimination case, the plaintiff opted to announce her treating psychiatrist as an expert witness, and by doing so became bound by the Rule 26(a)(2)(B) requirement of a written expert report. When the written report was not submitted, the District Court judge, the Hon. Héctor Laffitte, in his discretion and as a discovery sanction, excluded the testimony of the psychiatrist, a sanction which was upheld by the Circuit Court. *Peña–Crespo*, 408 F.3d 10.

The apparent overlap between a doctor's role as an expert and exclusively as a treating physician is especially present in a situation such as that in the instant case, where the physician in question treated the Plaintiff for a psychological condition. This situation differs from one where a physician treats a physical ailment because in the case of a physical ailment, there is much less room for varying interpretations as to the nature of the condition. For example, were the condition at issue in this case something such as a broken bone, there would be no room for debate as to what the ailment was: the fracture would be visibly verifiable either from a visual inspection of the patient or of an x-ray taken; once the fracture is confirmed, the diagnosis of the problem as a bone fracture follows logically therefrom. While there may be several treatment options for such a condition, there is little room to doubt the nature of the injury.

In the instant case, the injury in question is a mental one, and, as such, it is natural that the Defendant in this matter feels compelled to question the basis for the diagnosis made by Dr. Rivera. The requirement of a thorough expert report under these circumstances would seem to be the best way to enable the opposing party to adequately prepare for trial, especially since this case involves a diagnosis of PTSD, for the reasons discussed above. The nature of the treating physician's treatment, after all, is to determine a diagnosis and a prognosis, which is the basis of expert opinion. However, as is clear from the case law cited above, just because a diagnosis for PTSD necessarily relies on the opinion formed by the treating physician, the expert report requirement of Rule 26(a)(2)(B) is not triggered, since an opinion formed in the course of treatment is a necessary part of said treatment. *See Baker*, 163 F.R.D. 348, 349. Though this would appear to constitute a step backwards in the decades-long trend throughout the years of providing for thorough discovery during the pre-trial stage of litigation proceedings in order to avoid surprises during the trial stage, this Court is bound by the statutory authority and the relevant case law, and must therefore faithfully apply it. When the captain is in command, the sailor is not ("donde manda capitan no manda marinero").

■ In the instant case, the Plaintiff has not identified Dr. Rivera as an expert but rather as a treating physician. Therefore, so long as the testimony of Dr. Rivera is limited to the topics of the nature and treatment of Plaintiff González's psychological condition, and the opinions that he presents are limited to those he formed as part of his treatment of the patient, Dr. Rivera need not file an expert report as required by Rule 26(a)(2)(B).

Pursuant thereto, the Court hereby **DENIES** Defendant Executive Airlines, Inc.'s oral motion to compel Dr. Edmundo Rivera to file an expert report pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

■ However, the Court now refers to its discussion, *supra* at C, about the debate over the validity of the diagnosis of PTSD. The import of this debate is that it forces the Court to be particularly wary of when plain-

tiffs claim to be suffering from PTSD as a result of a defendant's actions. Under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, the trial judge has a "gatekeeper" role of screening evidence of scientific, technical, or other specialized knowledge to ensure that it is not only relevant, but reliable. *Id.,* at 589, 113 S.Ct., at 2794–2795; *see also* Fed.R.Evid. 702. It is for this reason that this Court always pays heed to the fact that psychologists are not psychiatrists, and the Court will not admit the testimony of a treating psychologist as an expert until verifying that the patient was referred to the psychologist by a psychiatrist, and further verifying that the psychologist qualified by "knowledge, skill, experience, training, or education." *Ed Peters Jewelry Co. v. C & J Jewelry Co.,* 124 F.3d 252, 259 (1st Cir.1997); *citing Daubert,* 509 U.S. 579, 592, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469. Though *Daubert* and its progeny facially deal with the admissibility of the testimony of experts in their proffer of opinion testimony, which is exempt from the "usual requirement of first-hand knowledge," *Daubert,* 509 U.S. 579, 592, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469, by implication and by the application of common sense, the judge's duty to screen scientific or specialized evidence extends beyond that of expert witnesses, but also to the proverbial "percipient witness who happens to be an expert," as described by Judge Selya in *Gómez,* 344 F.3d 103, 113.

Therefore, the Court's ruling denying Defendant's motion to compel Dr. Rivera to produce an expert report does not leave the Defendant unprotected. Dr. Rivera's testimony need not take the Defendant by surprise during the trial, as he has the right to send interrogatories and to depose Dr. Rivera as to the nature of the testimony he intends on giving, the contents of the report on treatment that Dr. Rivera has already provided, as well as the information that he would be compelled to disclose under Rule 26, such as the nature of his opinions as to the Plaintiff's condition, his basis for reaching said conclusions and the cause of the injury, the data or information he relied on in reaching said conclusions, his professional

qualifications, any publications he has authored on pertinent topics, his compensation for treating the Plaintiff and for participating in this litigation, if any, and the identification of any other cases in which he has testified or been deposed, if any.

Furthermore, the Court hereby **STRIKES** from the record the reports written by Dr. Edmundo Rivera and Julie Harper, L.C.S.W., which accompany the Plaintiff's medical record from the Orlando Regional Behavioral Healthcare Group. These reports, which were written in January of 2005, after the filing of the Complaint in this matter, are written in letter form (they are addressed "To Whom It May Concern") and are not a proper part of the Plaintiff's medical record, and instead appear to have been composed for the purposes of this litigation, which places them outside the scope of testimony arising from the treatment of the Plaintiff. As the Advisory Committee notes to 26(a)(2)(B) state, "the requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide [scientific] testimony in the case."

Dr. Rivera's letter states that he has known Plaintiff González since he first evaluated her on June 10, 2004. It goes on to state that "In [his] opinion, this patient has symptoms consistent with severe post traumatic stress disorder which is directly related to the aviation accident she was involved in as a passenger on an American Airlines flight from Mayaguez to San Juan, Puerto Rico on May 9, 2004." Dr. Edmundo Rivera's report at 1. The letter states some of her symptoms, including nightmares, flashbacks, panic attacks, and depression, and lists several medications he has prescribed her. *Id.* Julie Harper's report states essentially the same thing, adding that Plaintiff González was referred to her by Dr. Rivera, and that the Plaintiff at one point had suicidal thoughts. Julie Harper's report at 1. Both reports state that the Plaintiff has shown little improvement during treatment and recommend further therapy.

The reports from Dr. Rivera and Ms. Harper are not an official part of the Plaintiff's

medical record at the Orlando Regional Behavioral Healthcare Group, and constitute instead materials prepared as part of the litigation and having nothing to do with the treatment of the Plaintiff, giving rise to the impression that they are after thought notes from the treating physician and the therapist. The reports describe a broad overview of their treatment of the Plaintiff, but, as stated above, the proper vehicle for the disclosure of that information is through interrogatories and depositions, as Dr. Rivera and Ms. Harper are not experts retained for the purposes of this litigation. This being the case, they can not intend to proffer testimony—which these reports would constitute—which falls outside the scope of their treatment of the Plaintiff. The reports could prove to be prejudicial to the Defendant in that they are proffered as part of the record of the Plaintiffs' treatment at the clinic, when in fact they were prepared as part of this litigation, which places Dr. Rivera and Ms. Harper outside their role as "actors" in the facts of this case. Therefore, the Court will accept as evidence the Plaintiff González's medical record from the Orlando Regional Behavioral Healthcare Group, but without the reports from Dr. Rivera and Ms. Harper.

**IT IS SO ORDERED AND ADJUDGED.**