*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0129p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JESSE A. FIELDEN,

>*Plaintiff-Appellant,*

v.

>No. 05-4377

CSX TRANSPORTATION, INC.,

>*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 03-00995—George C. Smith, District Judge.

Argued: January 24, 2007

Decided and Filed: April 6, 2007

Before: SILER, GIBBONS, and ROGERS, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Thomas H. Peyton, PEYTON LAW FIRM, Nitro, West Virginia, for Appellant. Ira
L. Podheiser, BURNS, WHITE & HICKTON, Pittsburgh, Pennsylvania, for Appellee. **ON BRIEF:**
Thomas H. Peyton, PEYTON LAW FIRM, Nitro, West Virginia, for Appellant. Ira L. Podheiser,
Daniel J. Hampton, BURNS, WHITE & HICKTON, Pittsburgh, Pennsylvania, for Appellee.

---

**OPINION**

---

ROGERS, Circuit Judge. This appeal concerns the scope of the expert report requirement
of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. In particular, the issue is whether a
plaintiff pursuing a claim under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 *et seq.*,
must file an expert report before the plaintiff's treating physician can testify as to the cause of the
plaintiff's carpal tunnel syndrome. In this case, Jesse Fielden did not file a timely expert report from
his treating physician about the cause of Fielden's carpal tunnel syndrome. The district court held
that Rule 26(a)(2)(B) required the filing of the expert report and refused to consider the treating
physician's testimony that Fielden's use of a "plate jack" while working at CSX Transportation
caused Fielden's carpal tunnel syndrome. Without the treating physician's testimony, there was no
expert evidence that CSX Transportation caused Fielden's injury, and the district court therefore
granted summary judgment for the defendant. Because Rule 26(a)(2)(B) did not require the filing
of an expert report in this case, we reverse the district court's grant of summary judgment.

1

In 1976, Fielden began working in the railroad industry, and, after brief stints in other jobs, began working as a trackman and equipment operator at CSX Transportation, Inc. ("CSXT"), an interstate railroad company, on June 1, 1999. In 2000, Fielden complained of numbness and tingling in his arms and fingers, and a law firm referred Fielden to Dr. Mark Woodward, who diagnosed Fielden with mild carpal tunnel syndrome in his right hand. In June 2001, Dr. David A. Southwick, Fielden's treating physician, diagnosed Fielden with carpal tunnel syndrome in his left hand. In October 2001, March 2002, and February 2003, Fielden underwent a series of surgeries to alleviate his symptoms. Although he does not experience the pain that he once had, Fielden complains of motor skills problems and a loss of movement in his hands.

Evidence of the source of Fielden's injuries is of two sorts. First, Fielden described how he experienced pain in his right hand when operating a "plate jack," a pounding and vibrating machine that jacked up a rail to permit an operator to slide a tie plate underneath. Second, Dr. Thomas J. Fischer, another of Fielden's treating physicians, testified that he "felt that [Fielden's] original carpal tunnel syndrome was a work-aggravated condition."[1]

On October 29, 2003, Fielden brought a civil action against CSXT pursuant to FELA alleging that CSXT "negligently subjected [Fielden] to the risk of severe injury to his hands and wrists by assigning [Fielden] to operate a plate jack machine," and that as "a direct and proximate result of [CSXT's negligence, Fielden] sustained severe, permanent and lasting injury to both hands and arms." Fielden sought to recover money damages for lost earnings, medical expenses, and physical pain and suffering.

On April 1, 2004, Fielden served his initial disclosure of potential witnesses, identifying Dr. Southwick and Dr. Fischer as "individuals [who] may have information relevant to Mr. Fielden's employment history . . . and his medical condition resulting from [CSXT's] negligence." On September 22, 2004, Fielden responded to CSXT's interrogatories. Interrogatory 24 read: "Please disclose the existence of all persons and produce all documents forthwith required by Federal Rule of Civil Procedure 26(a)(2)(A) & (B)." Fielden responded by listing Dr. Southwick and Dr. Fischer, noting that both "will testify on the issue of causation."

The deadline for filing expert reports repeatedly changed. On April 1, 2004, the magistrate judge issued a Preliminary Pretrial Order directing (1) primary expert disclosures under Rule 26(a)(2) to occur by September 3, 2004, (2) discovery to continue until December 10, 2004, and (3) the filing of dispositive motions by January 14, 2005. The order did not set a trial date. On September 12, 2004, the district court extended the deadline for Fielden's expert disclosures, and on October 1, 2004, CSXT filed an unopposed motion for an extension of time, which the magistrate judge granted on October 18, 2004. At the end of all extensions, Fielden needed to file expert reports by December 1, 2004, the new deadline for discovery was March 1, 2005, and the final day

---

[1]The deposition transcript establishes that Dr. Fischer formed his opinion while treating Fielden and that he was not testifying about his current expert opinion. The transcript reads:

Q:     [I]t is your opinion, as Mr. Fielden's . . . attending and treating physicians, that his work with the railroad aggravated the condition and pressure on the median nerve that caused him to have these symptoms [of] carpal tunnel syndrome?

A:     From my review of the records of his previous treatment [with other doctors] and my evaluation of him when I first saw him, I felt that his original carpal tunnel syndrome was a work-aggravated condition, yes.

JA 393. Dr. Fischer's deposition testimony refers to "my review of the records of his previous treatment" because Dr. Fischer treated Fielden after Dr. Southwick treated him.

CSXT argues that Dr. Fischer formed his opinions at a later point because, in his tardy expert report, Dr. Fischer failed to clarify when he came to believe that Fielden's work caused the carpal tunnel syndrome. There is no reason, however, to expect the expert report to address when he, as a treating physician, came to believe that CSXT caused Fielden's injury.

for filing dispositive motions was April 1, 2005. Fielden did not provide expert reports to CSXT by December 1, 2004.

On December 21, 2004, Fielden's counsel wrote a letter to Dr. Fischer requesting a "detailed narrative report" and an "opinion as to whether the condition for which you treated Mr. Fielden is causally related to his work with the railroad." On December 23, 2004, the parties set Dr. Southwick's deposition for January 31, 2005. At CSXT's request, the parties moved the date to April 22, 2005, and then to June 13, 2005. The parties deposed Dr. Southwick and Dr. Fischer on June 13 and 14, respectively.

On April 1, 2005, the final day for filing dispositive motions, CSXT filed a motion for summary judgment, arguing that the record did not demonstrate CSXT's negligence or a causal connection between CSXT's actions and Fielden's injuries. In his response to CSXT's motion for summary judgment, Fielden attached a letter report from one of Fielden's treating physicians and moved under Rule 56(f) for a continuance pending the completion of the depositions of Dr. Fischer and Dr. Southwick.

On September 1, 2005, the district court granted CSXT's motion for summary judgment and denied Fielden's Rule 56(f) request. The district court held that Dr. Fischer was an expert under Rule 26(a)(2)(B) and noted that Fielden did not file the required expert report by the December 1, 2004, deadline. Citing a letter from Fielden's counsel to Dr. Fischer, the district court noted that counsel failed to request the report from Dr. Fischer until 20 days after the deadline. The court also noted that counsel's letter demonstrated that counsel considered Dr. Fischer to be a Rule 26(a)(2)(B) witness. Because the district court considered Fielden's two treating physicians as retained experts under Rule 26(a)(2)(B), it excluded their testimony as a sanction for failure to comply with the rule. Finally, the district court granted summary judgment because, without expert testimony on the issue of causation, there was no genuine issue of material fact on an essential element of the claim.

Reversal is required in this case because Rule 26(a)(2)(b) does not require an expert report from a treating physician in the context of this FELA case where the proposed testimony was that a patient's extensive use of a "plate jack" at work caused the patient's carpal tunnel syndrome.[2] Permitting a treating physician to testify on causation in this context is consistent with the plain language of Rule 26(a)(2)(B) and does not lead to the perverse results that district courts have recognized in other contexts.

Rule 26(a)(2)(B) by its terms provides that a party needs to file an expert report from a treating physician only if that physician was "retained or specially employed to provide expert testimony." In this case, Fielden did not retain Dr. Fischer for the purposes of providing expert testimony because there is evidence that Dr. Fischer formed his opinions as to causation at the time that he treated Fielden and there is no evidence that Dr. Fischer formed his opinion at the request of Fielden's counsel. The Advisory Committee Notes also support the conclusion that Fielden did

---

[2]**Rule 26. General Provisions Governing Discovery; Duty of Disclosure** . . .
      (2) *Disclosure of Expert Testimony* . . .
(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

not need to file an expert report from Dr. Fischer. The Note to Rule 26 states that "[a] treating physician . . . can be deposed or called to testify at trial without any requirement for a written report." Fed. R. Civ. P. 26(a), cmt. 1993 Amendments, subdivision (a), para (2). Under a straightforward reading of the rule and its advisory note, Fielden did not need to file an expert report from Dr. Fischer.

This conclusion is supported by the obvious fact that doctors may need to determine the cause of an injury in order to treat it. Determining causation may therefore be an integral part of "treating" a patient. As a thoughtful U.S. Magistrate Judge reasoned in permitting causation testimony without a prior expert's report,

> It is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of an examination. To assume otherwise is a limiting perspective, which narrows the role of a treating physician. Instead, to properly treat and diagnose a patient, the doctor needs to understand the cause of a patient's injuries. *See McCloughan* [*v. City of Springfield*]*,* 208 F.R.D. [236,] 242 [(C.D. Ill. 2002)] ("doctors do not operate in a vacuum. . . . Thus, the [c]ourt believes causation, diagnosis, and prognosis would be based on the treating physician's personal knowledge. . . .").

*Martin v. CSX Transp., Inc.*, 215 F.R.D. 554, 557 (S.D. Ind. 2003); *see also Mackey v. Burlington N. Santa Fe Ry. Co.*, No. 05-4133-SAC, 2006 WL 3512958, at *2 (D. Kan. Nov. 29, 2006) (permitting a treating physician to testify as to causation "to the limited extent that opinions about the cause of an injury are a necessary part of the patient's treatment" (quoting *Starling v. Union Pacific*, 203 F.R.D. 468, 479 (D. Kan. 2001))); *Prater v. Consolidated Rail Corp.*, 272 F. Supp. 2d 706, 712 (N.D. Ohio 2003).

It is true that in an unpublished opinion we upheld a magistrate judge's order requiring treating physicians to file expert reports under Rule 26(a)(2)(B). *See Ridder v. City of Springfield*, No. 9503358, 1997 WL 117024, at *4 (6th Cir. March 13, 1997). But in that case the magistrate's order permitted treating physicians to testify without filing expert reports "so long as they [did] not purport to testify beyond the scope of their own diagnosis and treatment," and the court in *Ridder* did not preclude the plaintiff "from submitting, in opposition to summary judgment, a properly sworn affidavit by a treating physician detailing [the plaintiff's] treatment" without an expert report. *Id. Ridder* is consistent with a number of other cases in which courts have required expert reports for treating physicians in order to further the apparent underlying policies of Rule 26(b). These cases nonetheless do not support requiring an expert report in the present case.[3]

The biggest concern with permitting treating physicians to testify in all circumstances without providing expert reports is that this would permit circumvention of the policies underlying the expert report requirement. A party might attempt to avoid Rule 26(a)(2)(B)'s requirement by having a treating physician testify on an issue instead of having an expert do so. Some courts have accordingly concluded that when the nature and scope of the treating physician's testimony strays from the core of the physician's treatment, Rule 26(a)(2)(B) requires the filing of an expert report from that treating physician. *Sellers v. Butler*, No. 02-3055-DJW, 2006 WL 2714274, at *4 (D. Kan. Sept. 22, 2006); *Martin*, 215 F.R.D. at 557 n.3; *Bell v. Ill. Cent. Ry. Co.*, No. 3:05-cv-904-DRH, 2006 WL 3841544, at * 4 (S.D. Ill. Dec. 14, 2006). "The determinative issue is the scope of the

---

[3] Although this court in *Harville v. Vanderbilt University*, 95 Fed. App'x 719, 724 (6th Cir. 2003), mentioned the expert report requirement of Rule 26(a)(2)(B) in the context of discussing whether a treating physician's testimony could be admitted, the case is not on point because it relied on the plaintiff's failure to comply instead with Rule 26(a)(2)(A)'s disclosure requirement. Here, in contrast, Fielden disclosed the name of the treating physicians to CSXT, thus complying with Rule 26(a)(2)(A).

proposed testimony." *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995). *See generally, First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust,* No. C-03-02013 RMW, 2006 U.S. Dist. LEXIS 57113, at \*45 (N.D. Cal. Aug. 2, 2006). Under this purposive reading of Rule 26, a report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment.

Courts drawing this line have considered a variety of factors. None of those factors, however, suggests that Rule 26(a)(2)(B) required Fielden to file an expert report in this case before Dr. Fischer could testify on the issue of causation.

This case is different, for instance, from *Mohney v. USA Hockey, Inc.*, 138 Fed. App'x 804, 811 (6th Cir. 2005), a case in which we considered when a treating physician formed his or her opinions on causation. In that case, we upheld the exclusion of three paragraphs of a treating physician's affidavit for failure to comply with Rule 26(a)(2)(B), explicitly distinguishing *Martin, supra*, as not involving a treating physician's opinion that was rendered "in anticipation of litigation." *Mohney*, 138 Fed. App'x at 811. The treating physician in *Mohney* reviewed a videotape of an accident and opined as to the cause of the patient's injury, an opinion based, in part, on the tape. There was "no evidence that [the treating physician] reached the same conclusions regarding causation at the time he treated [the patient]." *Id.* In addition, the district court had not struck paragraphs of the treating physician's opinion about "matters over which [he] had personal knowledge." This case differs from *Mohney* in that there is evidence that Dr. Fischer reached his conclusion about the cause of Fielden's injuries at the time of the treatment.

This case is also distinguishable from those that look directly to the extent to which the Rule's underlying procedural fairness is implicated. Rule 26(a) generally serves to "allow[ ] both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). In this case, Fielden provided sufficient information about the nature of Dr. Fischer's testimony, CSXT prepared its case accordingly, and Dr. Fischer's testimony did not stray from the notice that Fielden provided. There was, therefore, no surprise as to the scope of the testimony. *See Garza v. Roger Henson Trucking, L.L.C.*, No. 7:05CV5001, 2006 WL 1134911, at \*2 (D. Neb. Apr. 26, 2006). Expert reports also "minimize the need for expert depositions, especially in light of the fact that, pursuant to Rule 26(b)(4)(C), the party taking the expert's deposition must usually pay a reasonable fee for the expert's time." *Sowell v. Burlington N. & Santa Fe Ry. Co.*, No. 03-C-3923, 2004 WL 2812090, at \*5 (N.D. Ill. Dec. 7, 2004). Here, the parties already planned to depose Dr. Fischer as a treating physician and there do not appear to be any additional costs associated with deposing him on the issue of causation.

Nor is this case inconsistent with those that have focused on the content of the physician's testimony. For example, courts are more likely to require a treating physician to provide an expert report if the condition at issue leaves room for debate as to the specific ailment and its sources. *See Gonzalez v. Executive Airlines*, 236 F.R.D. 73, 81 (D. P.R. 2006) (discussing post traumatic stress disorder). In such circumstances, an opposing party will be less prepared to depose a treating physician without an expert report. Here, in contrast, CSXT cannot claim that confusion as to the nature of the treating physicians' testimonies prevented it from preparing for the depositions. CSXT was aware that the treating physicians planned to testify that repetitive wrist movement, as might occur with the use of a "plate jack," might cause carpal tunnel syndrome in some patients, and did, in fact, cause Fielden's injuries. *See The Merck Manual of Diagnosis and Therapy* 491 (Mark H. Beers & Robert Berkow eds.) (1999) ("Activities on jobs that require repetitive flexion and extension of the writs (eg, keyboard use) may pose an occupational risk."). Other courts consider whether the doctor will rely on ordinary medical training before determining whether a doctor is testifying as a treating physician or a retained expert. *Sowell*, 2004 WL 2812090, at \*5. When a

physician testifies to issues beyond those covered in ordinary medical training, the physician is behaving in a manner more similar to a retained expert. Here, there is no evidence in the record that Dr. Fischer applied anything other than his ordinary medical training when he concluded that Fielden's working conditions caused Fielden's carpal tunnel syndrome injuries. Finally, some courts consider whether a treating physician relies on tests, documents, books, videos, or other sources that the physician did not rely upon during his or her treatment of the patient. *Mohney v. USA Hockey, Inc.*, 300 F. Supp. 2d 556, 561 (N.D. Ohio 2004) (physician reviewing videotape of accident). In such circumstances, the treating physician is acting like the retained expert who normally reviews materials that the parties provide. In this case, however, there is no evidence that Dr. Fischer based his opinion as to the cause of Fielden's injury on any source other than his treatment.[4]

Because the plain meaning of Rule 26(a)(2)(B) indicates that Fielden did not need to file an expert report before Dr. Fischer could testify on the issue of causation, and because there are no grounds to hold that Dr. Fischer functioned as a retained expert in this case, the district court should not have excluded Dr. Fischer's testimony on causation.

It follows that summary judgment in favor of CSXT was not appropriate in this case. Dr. Fischer's testimony on causation coupled with Fielden's testimony about his use of a "plate jack" created a genuine issue of material fact as to CSXT's liability. A "relaxed" standard of causation applies in FELA cases, *Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 812 (6th Cir. 1996), because FELA is "a remedial and humanitarian statute . . . enacted by Congress to afford relief to employees from injury incurred in the railway industry," *Mounts v. Grand Trunk W. R.R.*, 198 F.3d 578, 580 (6th Cir. 2000) (quoting *Edsall v. Penn Cent. Transp. Co.*, 479 F.2d 33, 35 (6th Cir. 1973)). As a result, a "jury should determine liability so long as the evidence justifies with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury." *Aparicio*, 84 F.3d at 808 (describing how "a jury trial is considered to be a 'goodly portion of the relief' which Congress has afforded railroad workers" (citation omitted)). Dr. Fischer's testimony on causation and Fielden's testimony about the machinery that he used while employed at CSXT satisfy this threshold.

Because the expert report was not required in this case, and summary judgment was not warranted for failure to provide evidence of causation, we reverse the judgment of the district court and remand for further proceedings.

---

[4] It is worth noting that the district court did not balance these factors and instruct Fielden to file the expert report, and CSXT did not demand an expert report after Fielden informed it that Dr. Fischer would testify on causation. The district court was silent as to whether it believed Rule 26(a)(2)(B) required the filing of expert reports until it issued its order granting summary judgment in CSXT's favor, and Fielden did not have an opportunity to raise relevant arguments before the district court.