250 P.3d 48 (2011)
2011 UT 15
R. Alan DREW, Plaintiff and Petitioner,
v.
Tonia Mann LEE, Defendant and Respondent.
No. 20080798.
Supreme Court of Utah.
March 15, 2011.
*49 Roger W. Griffin, Sandy, for plaintiff.
Peter H. Christensen, Ryan P. Atkinson, Salt Lake City, for defendant.
Ryan M. Springer, Salt Lake City, for amicus curiae Utah Association for Justice.
Justice NEHRING, opinion of the Court:

INTRODUCTION
¶ 1 In this appeal, we determine whether Utah Rule of Civil Procedure 26(a)(3)(B) requires parties to file a written expert report from treating physicians who plan to testify at trial. We hold that rule 26(a)(3)(B) requires parties to produce a written report only from experts who are "retained or specially employed" to testify and that treating physicians do not fall into this category. We therefore reverse the district court's decision and remand for further proceedings consistent with this opinion.

BACKGROUND
¶ 2 In October 2005, Richard Drew and Tonia Lee were involved in an automobile accident. During the collision, Mr. Drew was thrown from his motorcycle and landed on his head. He was immediately rushed to the emergency room at Alta View Hospital for treatment. As time passed, Mr. Drew continued to experience pain and discomfort from the accident and visited a handful of medical providers for further care.
¶ 3 In August 2006, Mr. Drew filed a complaint against Ms. Lee for damages related to the collision. As part of the discovery process, Mr. Drew identified his treating medical providers ("treating physicians") as required by Utah Rule of Civil Procedure 26(a)(3)(A) as expert witnesses who may be called to testify at trial.[1] Although Mr. Drew identified his experts, he did not produce any written expert reports as required by Utah Rule of Civil Procedure 26(a)(3)(B).[2]
¶ 4 In response, Ms. Lee filed a motion in limine to exclude the expert testimony. Ms. *50 Lee objected to the proposed expert testimony because Mr. Drew's treating physicians planned to opine on causation and prognosisissues Ms. Lee considered to be beyond the scope of care and treatment. According to Ms. Lee, if Mr. Drew wanted to move forward with this testimony, he was required to produce and provide written expert reports as required by Utah Rule of Civil Procedure 26(a)(3)(B).
¶ 5 The district court granted Ms. Lee's motion in limine. The district court concluded that because Mr. Drew's treating physicians intended to testify about the cause of Mr. Drew's injuries and his future prognosis, Mr. Drew was required to provide expert reports under rule 26(a)(3)(B). Relying on Pete v. Youngblood,[3] the district court reasoned that if a treating physician's testimony goes beyond the scope of mere diagnosis and treatment of the patient, then the physician becomes a "retained expert" and the party must comply with both subsection (a)(3)(A) by identifying the expert, and with subsection (a)(3)(B) by filing an expert report. Because Mr. Drew failed to produce written expert reports, the district court held that his treating physicians could not testify as to causation and future prognosis at trial.
¶ 6 Mr. Drew filed this interlocutory appeal, which we granted. On appeal, Mr. Drew argues that treating physicians are exempt from the written report requirement in rule 26(a)(3)(B) because treating physicians are not "retained" experts or "specially employed" by parties to testify at trial.[4] We have jurisdiction under Utah Code section 78A-3-102(3)(j) (Supp.2010).

STANDARD OF REVIEW
¶ 7 "[T]he interpretation of a rule of procedure is a question of law that we review for correctness."[5]

ANALYSIS
¶ 8 Utah Rule of Civil Procedure 26 outlines the requirements for parties who seek to admit expert testimony at trial. Under rule 26(a)(3)(A), "[a] party shall disclose to other parties the identity of any person who may be used at trial to present evidence under [r]ules 702, 703, or 705 of the Utah Rules of Evidence."[6] Rules 702, 703, and 705 "relate to testimony by experts, the bases of opinion testimony by experts, and the disclosure of facts or data underlying expert opinion, respectively."[7] Utah Rule of Civil Procedure 26(a)(3)(B) establishes an additional requirement for some types of experts. Under this rule:
Unless otherwise stipulated by the parties or ordered by the court, [a party's expert] disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case[,] . . . be accompanied by a written report prepared and signed by the witness or party.[8]
¶ 9 In this case, we must determine what it means to be "retained or specially employed to provide expert testimony" such that the written report requirement in rule 26(a)(3)(B) applies.
¶ 10 Ms. Lee asks us to uphold the district court's decision because she claims that under rule 26(a)(3)(B), treating physicians who intend to testify on matters beyond personal *51 observations made during the course of the patient's care and treatment, must file expert reports. In support of her argument, Ms. Lee relies heavily on the court of appeals' decision in Pete v. Youngblood.[9] Ms. Lee argues that under Youngblood, district courts should focus on the substance of the expert testimony rather than the status of the expert as a treating physician to determine whether the expert was "retained or specially employed to provide expert testimony" at trial.
¶ 11 But according to Mr. Drew, rule 26(a)(3)(B) does not require him to produce written expert reports from his treating physicians because Mr. Drew did not "retain[] or specially employ[]" them to testify as experts at trial. Rather, Mr. Drew argues that because his experts are treating physicians, rule 26(a)(3)(B) is inapplicable and that the only applicable rule is 26(a)(3)(A), which simply requires him to identify who his experts will be. Mr. Drew argues that this approach is most consistent with the plain language of rule 26 and the court of appeals' ultimate holding in Youngblood. Because Mr. Drew identified his experts under rule 26(a)(3)(A), he argues the district court erred when it granted Ms. Lee's motion in limine.
¶ 12 We agree with Mr. Drew. We begin by briefly discussing Youngblood, the central case the district court relied on in its decision. We then turn to the plain language and purpose of rule 26 to ultimately resolve the issue presented to us on appeal.

I. PETE V. YOUNGBLOOD DOES NOT REQUIRE PARTIES TO PRODUCE EXPERT REPORTS FROM TREATING PHYSICIANS NOT "SPECIALLY RETAINED" OR "EMPLOYED TO TESTIFY" AT TRIAL
¶ 13 On appeal, both parties spend a great deal of time discussing portions of Pete v. Youngblood.[10] In Youngblood, a patient sued her doctor for medical malpractice because the doctor allegedly left surgical gauze packed in the patient's body.[11] "During the discovery phase, [the patient] designated several of her treating physicians as individuals likely to have discoverable information."[12] The patient did not, however, "designate any expert witnesses by the court-imposed deadline" as required by Utah Rule of Civil Procedure 26(a)(3)(A).[13] The doctor moved for summary judgment claiming that the patient had "failed to state a prima facie case of medical malpractice because she had not designated an expert to opine as to the standard of care and breach."[14] The patient responded with an affidavit from one of her treating physicians that included an opinion on the standard of care.[15] But because the patient had not designated her treating physician as an expert, the district court struck the affidavit and granted summary judgment in favor of the doctor.[16] The patient appealed.
¶ 14 The court of appeals affirmed the district court's decision because it concluded that if a treating physician provides expert evidence under Utah Rules of Evidence 702, 703, or 705, the physician must be identified as an expert under Utah Rule of Civil Procedure 26(a)(3)(A).[17] The court of appeals went on to state that "to determine if an expert need be identified before trial, [r]ule 26 focuses not on the status of the witness, but rather on the substance of the testimony."[18]
¶ 15 While both parties spend a great deal of time discussing the scope of Youngblood and how the district court applied it to this case, we conclude that Youngblood does not answer the question before us. Although dicta in Youngblood can be extracted to support *52 both parties' positions, the court of appeals' analysis was limited to whether rule 26(a)(3)(A) requires a party to identify its treating physicians as experts. It did not resolve whether rule 26(a)(3)(B) requires parties to produce treating physician expert reports.[19] Because we conclude that Youngblood does not assist in our resolution of the expert report question, we turn to our traditional plain language analysis and other interpretive tools to resolve this issue.

II. RULE 26(a)(3)(B) DOES NOT REQUIRE PARTIES TO DISCLOSE WRITTEN EXPERT REPORTS FROM TREATING PHYSICIANS
¶ 16 When we interpret a rule of civil procedure, we look to the express language of the rule and to cases interpreting it.[20] Like statutes, we read each term in the rule "according to its ordinary and accepted meaning."[21] "Because the Utah Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, where there is little Utah law interpreting a specific rule, we may [also] look to the Federal Rules of Civil Procedure for guidance."[22] When we conduct this analysis, "it is most important that the rules be understood, and applied, with clarity and consistency, and that the defendant, the court, the state, and others be able to determine the meaning of the rule."[23]
¶ 17 We begin by examining the plain language of rule 26.[24] Rule 26(a)(3)(B) provides that a party's expert disclosure shall, "with respect to a witness who is retained or specially employed to provide expert testimony in the case[,] . . . be accompanied by a written report."[25] This rule specifically "contemplates two different classes of experts: those retained or specially employed to give testimony in the case, and other witnesses who may qualify as [experts] but are not retained or specially employed" to testify at trial.[26]
¶ 18 Because written reports are required only of "retained or specially employed" experts, it is critical to explore the meaning of these terms. Traditionally, to "retain" means "to keep in one's service."[27] Similarly, "employ" means "to hire,"[28] usually "in exchange for financial compensation."[29] The word "specially" means "arranged, issued, or appropriated to a particular service or occasion."[30] Taken together, these definitions suggest that a "retained or specially employed" expert is a person who a party hires and pays to express a particular expert opinion for the purposes of litigation.
*53 ¶ 19 While the plain language appears to be relatively straightforward, its application is more challenging. Generally, all experts are hired and compensated for their trial testimony, and thus there must be some further way to distinguish "retained or specially employed" experts from other experts who are not retained or specially employed, but still testify at trial.[31] Because we have not considered this question before, we turn to the similar federal rule for guidance.[32]
¶ 20 Our examination of the expert report requirement of federal rule 26 and cases interpreting it reveals "widely divergent views" on the issue.[33] The majority of jurisdictions apply what is commonly known as the "substance-based" approach to the rule.[34] This method is often referred to as the substance-based model because it focuses on the content or scope of the expert's testimonyrather than the status of the individual as a treating physicianin order to assess whether the expert report requirement applies.[35] Under this approach, a trial judge must evaluate the proposed testimony on a case-by-case basis to determine whether the physician's opinion is based on the care and treatment of the patient or if it was formed from outside sources of information.[36] If this inquiry reveals that the treating physician will testify to matters learned outside the scope of treatment, the physician must file an expert report under rule 26.[37]
¶ 21 While a majority of jurisdictions follow this substance-based approach to the rule, there is vast disagreement among them regarding what information falls within the scope of care and treatment of a patient. Most jurisdictions have concluded that causation and prognosis are inseparable from a doctor's care and treatment of a patient, and thus a physician is not required to file an expert report to opine on these issues.[38] *54 Other jurisdictions consider opinions on causation to always fall outside the scope of treatment, and thus require a party to file an expert report.[39] And some jurisdictions will allow causation and prognosis testimony without the filing of an expert report on a case-by-case basis, but only if a determination is made that the opinion was "not acquired or developed in anticipation of litigation or for trial."[40]
¶ 22 Although the substance-based approach has its advantages, "it is not always easy to determine when a treating physician, will, by virtue of the scope of the opinions offered, cross the line into becoming a specially retained expert whose report must be provided."[41] This case-by-case examination is subjective and probing and can easily lead to inconsistent results. While this approach is laudable in its goal to fairly regulate the content of expert testimony, its practical application is often inconsistent, unpredictable, costly, and time consuming.
¶ 23 Because of the practical problems and inconsistent results that stem from the majority approach, we adopt an alternative method to the expert report requirements of rule 26. Rather than choosing to focus on what the expert will say, we will instead determine which experts are required to file an expert report by separating physician experts into two categories: (1) physicians the party visited for purposes of medical treatment ("treating physicians") and (2) other physicians who are "specially retained or employed" for purposes of litigation. In making this determination, we do not look to the substance, sources, or scope of the physician's proposed testimony; we simply look to the status of the individual as a treating physician. In most cases, this "status-based" distinction will be easy to make and uncontroversial.
¶ 24 The view that treating physicians can be separated into a different class than retained experts is also supported by the advisory committee's notes to the federal rule:
The requirement of a written report . . . applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.[42]
¶ 25 Notably, the Advisory Committee used "treating physicians" as the quintessential example of expert witnesses who are exempt from the written report requirement; the committee did not suggest that a substantive analysis of the treating physician's testimony is necessary or relevant to the rule 26 discussion.
¶ 26 While in most cases a trial court will easily be able to determine whether an individual is a treating physician or a retained expert, we recognize that there may *55 be some cases where the distinction may be blurred. For example, a plaintiff may identify an individual as a treating physician, but opposing counsel may point to characteristics of the individual that suggest he or she is actually a retained expert. In these cases, the party's description of the expert as a treating physician is not determinative and the district court should focus on this non-exhaustive list of relevant questions to aid in this inquiry:
1. Why did the party visit the physician?
2. How proximate to the litigation was the party's visit to the physician?
3. Was the party sent to the physician by his or her attorney?
4. How did the physician's office code the patient's visit for insurance purposes? And,
5. Does the physician have a history of serving as a retained expert witness at trial?
¶ 27 If the answers to these questions reveal that a party went to the physician's office for treatment, that expert is considered a treating physician under the rule and no report is required. But if the party went to the physician's office for a purpose other than treatment, the physician is likely a retained expert and the party must produce an expert report.
¶ 28 Additional support for a focus on the status of the physicianrather than the substance of the physician's testimonycan be found by examining the purpose of rule 26. The purpose of filing an expert report under this rule is "to provide opposing parties a reasonable opportunity to prepare for an effective cross-examination" of the expert.[43] This purpose is preserved because parties are still required to identify their experts under rule 26(a)(3)(A), and opposing counsel can use a variety of discovery tools to obtain all the information needed to question the expert at trial.[44] For example, a party may depose a treating physician to discover the content of the physician's testimony and may subpoena medical records to learn additional information about the physician's treatment of the patient. These tools will eliminate unfair surprise at trial and will likely lead to more information than could be gleaned from an expert report.
¶ 29 Finally, we note that the status-based approach to rule 26(a)(3)(B), which we endorse today, will not encourage evasion of the rule or result in broad, unsubstantiated testimony from treating physicians. Practical considerations and court rules will forestall this potential abuse. As a threshold matter, a treating physician must meet the requirements to be an expert set out in Utah Rule of Evidence 702 and may not testify to matters that are beyond the expert's own knowledge, skill, experience or other specialized training.[45] And of course, a treating physician's testimony, like that of any other witness, must be relevant to the case and is subject to Utah Rules of Evidence 401 and 403. Finally, for those who fear that counsel will abuse our interpretation of rule 26(a)(3)(B) and "seek to cloak `retained' experts in unretained expert guise," rules 11 and 37 of the Utah Rules of Civil Procedure "should give them pause."[46] If a party fails to disclose a witness as required by rule 26(a), rule 37 of the Utah Rules of Civil Procedure permits opposing parties to move to compel discovery and seek appropriate sanctions, including the exclusion of the witness.[47] Rule 11 allows the court to impose sanctions on attorneys who make false representations to the court.[48] The weighty consequences of skirting disclosure requirements should be sufficient to caution parties and counsel against bad faith noncompliance with this rule.
¶ 30 In summary, our approach to rule 26(a)(3)(B) is a status-based inquiry. We conclude that this bright-line approach is the *56 most practical and fair interpretation of the rule and will lead to consistent application and results. We thus conclude the district court erred when it excluded the testimony of Mr. Drew's treating physician because Mr. Drew did not file expert reports under rule 26(a)(3)(B). Mr. Drew has, under rule 26(a)(3)(A), identified nine medical professionals who he may choose to call to testify at trial. According to Mr. Drew, each of these individuals has treated him for injuries related to the car accident. To the extent the district court determines that these individuals are actually treating physicians as identified, it should allow the physicians to testify about treatment at trial and let them offer an opinion about causation and prognosis without filing an expert report. However, if the district court determines that these individuals are not treating physicians, it should proceed as necessary under the governing rules of civil procedure. We therefore reverse the decision of the district court and remand for the district court to reexamine this issue in light of the rule articulated in this opinion.

CONCLUSION
¶ 31 The plain language of rule 26(a)(3)(B) does not require a party offering treating physician testimony to file expert reports, even if those physicians are testifying about causation and future prognosis. We therefore reverse the district court's decision to grant Ms. Lee's motion in limine and remand this case for proceedings consistent with this opinion.
¶ 32 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Judge JUDKINS concur in Justice NEHRING's opinion.
¶ 33 Due to his retirement, Justice WILKINS did not participate herein. District Court Judge CLINT S. JUDKINS sat.
¶ 34 Justice THOMAS R. LEE became a member of the Court on July 19, 2010, after oral argument in this matter, and accordingly did not participate.
NOTES
[1] Utah R. Civ. P. 26(a)(3)(A) ("A party shall disclose to other parties the identity of any person who may be used at trial to present evidence under [r]ules 702, 703, or 705 of the Utah Rules of Evidence.").
[2] Utah R. Civ. P. 26(a)(3)(B) ("Unless otherwise stipulated by the parties or ordered by the court, [a party's expert] disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case[,] . . . be accompanied by a written report prepared and signed by the witness or party." (emphasis added)).
[3] 2006 UT App 303, 141 P.3d 629.
[4] See Utah R. Civ. P. 26(a)(3)(B).
[5] State v. Rodrigues, 2009 UT 62, ¶ 11, 218 P.3d 610 (alteration in original) (internal quotation marks omitted).
[6] Utah R. Civ. P. 26(a)(3)(A).
[7] Pete v. Youngblood, 2006 UT App 303, ¶ 12 n. 4, 141 P.3d 629; see also Utah R. Evid. 702, 703, 705.
[8] Utah R. Civ. P. 26(a)(3)(B) (emphasis added).

The report shall contain the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Id.
[9] 2006 UT App 303, 141 P.3d 629.
[10] 2006 UT App 303, 141 P.3d 629.
[11] Id. ¶ 4.
[12] Id. ¶ 5.
[13] Id.
[14] Id. ¶ 6.
[15] Id.
[16] Id.
[17] Id. ¶¶ 12, 36.
[18] Id. ¶ 14 (alteration in original) (quoting Patel v. Gayes, 984 F.2d 214, 217-18 (7th Cir.1993)).
[19] Id. ¶ 11 n. 3 ("Because the trial court's decision to strike the [treating physician's] affidavit was based solely on the failure to designate [him] as an expert under rule 26(a)(3)(A), we do not address whether [the treating physician] was required to file an expert report under rule 26(a)(3)(B).").
[20] See First Equity Fed., Inc. v. Phillips Dev., LC, 2002 UT 56, ¶ 11, 52 P.3d 1137; Arbogast Family Trust v. River Crossings, LLC, 2010 UT 40, ¶ 16, 238 P.3d 1035.
[21] State v. Harker, 2010 UT 56, ¶ 12, 240 P.3d 780 (internal quotation marks omitted).
[22] Bichler v. DEI Sys., Inc., 2009 UT 63, ¶ 24 n. 2, 220 P.3d 1203; see also Tucker v. State Farm Mut. Auto. Ins. Co., 2002 UT 54, ¶ 7 n. 2, 53 P.3d 947 ("Interpretations of the Federal Rules of Civil Procedure are persuasive where the Utah Rules of Civil Procedure are `substantially similar' to the federal rules.").
[23] Arbogast Family Trust, 2010 UT 40, ¶ 16, 238 P.3d 1035 (alterations, emphasis, and internal quotations marks omitted).
[24] State v. Ison, 2006 UT 26, ¶ 16, 135 P.3d 864 (Because "[w]e interpret [court] rules using the same time-honored methods we employ to draw meaning from writings generally," we "look first to the plain meaning of the text of [the rule] for guidance.").
[25] Utah R. Civ. P. 26(a)(3)(B) (emphasis added).
[26] Piper v. Harnischfeger Corp., 170 F.R.D. 173, 174 (D.Nev.1997).
[27] Webster's II New College Dictionary 946 (1995); see also Kirkham v. Societe Air Fr., 236 F.R.D. 9, 12 (D.D.C.2006) ("`Retained' ordinarily implies some consideration, a payment or reward of some kind, for services rendered.").
[28] Black's Law Dictionary 602 (9th ed.2009).
[29] Webster's II New College Dictionary 369.
[30] Webster's II New College Dictionary 1059.
[31] Kirkham, 236 F.R.D. at 12 (noting that payment in exchange for expert testimony is not dispositive because "professional standards in some areas may permit treating physicians to be compensated for time spent as a witness or at a deposition").
[32] Compare Fed.R.Civ.P. 26(a)(2)(B) with Utah R. Civ. P. 26(a)(3)(B). The only appreciable difference between the federal and state rule is that, under the Utah rule, "an expert's report need not be written and signed by the expert" but instead "may be signed by the witness or party." Utah R. Civ. P. 26 advisory committee's note on 1999 amendments. This is because both plaintiff and defense attorneys "reported on the high cost of reports by experts, the growth of non-practicing experts as a profession, and the need to depose experts regardless of a written report." Id.
[33] Kirkham, 236 F.R.D. at 11.
[34] See, e.g., Zurba v. United States, 202 F.R.D. 590, 591 (N.D.Ill.2001) ("A treating physician is not considered a retained expert . . . and thus need not submit a report, if his testimony is based on observations made during the course of treatment."); Sprague v. Liberty Mut. Ins. Co., 177 F.R.D. 78, 81 (D.N.H.1998) ("The majority of other courts in the country have concluded that [expert] reports are not required as a prerequisite to a treating physician expressing opinions as to causation, diagnosis, prognosis and extent of disability where they are based on the treatment."); Salas v. United States, 165 F.R.D. 31, 33 (W.D.N.Y.1995) ("The relevant question is whether these treating physicians acquired their opinions as to the cause of the plaintiff's injuries directly through their treatment of the plaintiff. If so, then they must be treated as treating physicians") (internal citation omitted).
[35] See, e.g., Gass v. Marriott Hotel Servs., 501 F.Supp.2d 1011, 1016-17 (W.D.Mich.2007), rev'd in part on other grounds, 558 F.3d 419 (6th Cir.2009).
[36] See Kirkham, 236 F.R.D. at 13 ("[A] treating physician who bases his opinion on the medical records of another physician, not just on his own examination of the patient, is required to prepare an expert report because such review indicates he is being retained in connection with the litigation."); Zurba, 202 F.R.D. at 592 ("[I]t is only when the treating physician gives opinions beyond the scope of his own observation and treatment that he is considered a `retained' expert for purposes of [rule 26].").
[37] 6-26 James Wm. Moore et. al, Moore's Federal Practice § 26.23[2][b][iii] (2010).
[38] See, e.g., Fielden v. CSX Transp., Inc., 482 F.3d 866, 869-70 (6th Cir.2007) ("Under a straightforward reading of the rule and its advisory note, [the plaintiff] did not need to file an expert report from [his treating physician]. This conclusion is supported by the obvious fact that doctors may need to determine the cause of an injury in order to treat it. Determining causation may therefore be an integral part of `treating' a patient."); Martin v. CSX Transp., Inc., 215 F.R.D. 554, 557 (S.D.Ind.2003) ("It is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of an examination. To assume otherwise is a limiting perspective, which narrows the role of a treating physician. Instead, to properly treat and diagnose a patient, the doctor needs to understand the cause of a patient's injuries."); McCloughan v. City of Springfield, 208 F.R.D. 236, 242 (C.D.Ill.2002) (stating treating physicians may offer opinion testimony on causation, diagnosis, and prognosis without providing an expert report); see also Nesselbush v. Lockport Energy Assocs., L.P., 169 Misc.2d 742, 647 N.Y.S.2d 436, 436-37 (N.Y.Sup.Ct.1996) (same).
[39] See, e.g., Kondziolka v. Burlington N. & Santa Fe Ry. Co., No. 99 C 2148, 2000 WL 1368041, at *1-2, 2000 U.S. Dist. LEXIS 13771, at *4-5 (N.D.Ill. Sept. 15, 2000) (noting opinions about causation go beyond personal observations and treatment and thus require an expert report); Zarecki v. Nat'l R.R. Passenger Corp., 914 F.Supp. 1566, 1573 (N.D.Ill.1996) (noting that a physician's opinion about causation and forseeability was not derived solely from treatment or personal observations); Widhelm v. Wal-Mart Stores, Inc., 162 F.R.D. 591, 594 (D.Neb.1995) (finding that the plaintiff "attempt[ed] to circumvent her duty to identify experts and provide their reports by expanding the testimony of the treating physicians" to address causation).
[40] See, e.g., Brown v. Best Foods, 169 F.R.D. 385, 387 (N.D.Ala. 1996) (internal quotation marks omitted).
[41] Moore et al., supra note 37, § 26.23[2][b][iii].
[42] Fed R. Civ. P. 26(a)(2)(B) advisory committee's note on 1993 amendments (emphasis added); see also Drennen v. United States, 375 Fed. Appx. 299, 306-07 (4th Cir.2010) (allowing treating physicians to testify without filing an expert report is most consistent with the advisory committee's notes to federal rule 26(a)(2)(B)).
[43] Martin, 215 F.R.D. at 557.
[44] See id.
[45] Utah R. Evid. 702.
[46] Sprague, 177 F.R.D. at 82; see also Utah R. Civ. P. 11(c), 37 (providing for sanctions in the event attorneys or parties disregard obligations under the Utah Rules of Civil Procedure).
[47] See Utah R. Civ. P. 37(a)(2)(A), (f).
[48] Id. 11(c).