**2018 UT App 65**

# THE UTAH COURT OF APPEALS

KRISTEN PULHAM,
Appellee,
*v.*
WILLIAM KIRSLING,
Appellant.

Opinion
Nos. 20150577-CA and 20160236-CA
Filed April 12, 2018

Third District Court, Salt Lake Department
The Honorable Richard D. McKelvie
No. 104901246

Margaret S. Edwards, Attorney for Appellant

Steve S. Christensen and Clinton R. Brimhall,
Attorneys for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
KATE A. TOOMEY and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1 This case involves two appeals in the same domestic relations dispute.[1] In the first appeal (the First Appeal), William Kirsling challenges several aspects of the amended decree entered in his divorce from Kristen Pulham. In the second appeal (the Second Appeal), Kirsling challenges the trial court's denial of his petition to modify the divorce decree's custody

---

1. We have consolidated Case No. 20150577-CA and Case No. 20160236-CA for purposes of this opinion.

arrangement. We affirm the trial court's decisions in both appeals.

BACKGROUND

*The Trial and the Amended Decree*

¶2     Pulham and Kirsling were married in 2008 and separated in 2010. The parties had one child (Child) born during the marriage. In June 2012, the trial court entered a bifurcated decree of divorce, reserving several issues for trial.

¶3     At a bench trial in 2014, the parties contested the issues of custody, child support, past-due child support, and unreimbursed child care expenses. Each party also alleged that the other party was in contempt of the court's prior orders and should therefore face sanctions.

¶4     On Child's custody, the trial court made detailed findings. Among other things, it found that Pulham had remarried, had a son with her new husband, and was living in Tooele, Utah. The court also found that Pulham had been the primary caregiver of Child since birth and that, at the time of trial, Pulham was unemployed and was acting as the full-time caregiver of her younger son and Child.

¶5     Regarding Kirsling, the court found that he was living in Taylorsville, Utah, with his girlfriend and her children, and that Kirsling's older son from a previous marriage lived with Kirsling part-time. The court also found that Kirsling had resided in various places, including Brigham City, Utah, and Phoenix, Arizona, for lengthy periods after the parties separated. The court found that even though Kirsling's "contact and visitation with [Child] ha[d] been inconsistent for much of that time," his contact had "stabilized considerably" in the year leading up to trial.

¶6    Although Kirsling and Pulham agreed at trial that it would be in Child's best interest if they shared joint physical and legal custody, they sharply disagreed about the details of that custody, including where Child should be enrolled in school and with whom she should primarily reside. A custody evaluator prepared a custody evaluation and testified about it at trial.

¶7    Kirsling requested a court order requiring Child to enroll in the school near his home in Taylorsville for three years, at which point Child would then transfer to the school near Pulham's home for the latter half of elementary school. The court rejected Kirsling's request, reasoning that his plan would require Child "to spend considerable time commuting by car between Taylorsville and Tooele"—amounting to "upwards of an hour each way, before school and after school"—and that it was not in Child's best interest to do so merely to accommodate Kirsling's preferred parenting plan. The court also reasoned that Kirsling's plan would require Child to change elementary schools and that such a plan, which would put Child through "an unnecessary adjustment of surroundings, friends and routine," was not in Child's best interest.

¶8    In the November 2014 amended divorce decree (the Amended Decree), which followed the earlier bifurcated decree, the trial court awarded the parties joint physical and legal custody. The court also ordered that Pulham would be the primary custodial parent and would have the final say in parenting decisions for Child, including which school Child would attend.

¶9    As for parent-time, the court determined that a standard parent-time order, as anticipated under Utah Code section 30-3-35, did "not provide sufficient parent time" for Kirsling and was not in Child's best interest. As a result, the court awarded Kirsling additional parent-time in a manner that avoided

"creating the attendant travel time that would be inflicted upon [Child] by [Kirsling's] proposed parenting plan."

¶10   On future child support, the trial court found that it would be calculated based on Pulham's monthly income of $30 and Kirsling's monthly income of $4,580, "which are the stipulated monthly gross incomes" of the parties. Then, referencing the Utah Code and a custody worksheet,[2] the court ordered Kirsling to pay Pulham $548 per month for child support.

¶11   On past-due child support, the trial court found that the evidence supported Pulham's claim that Kirsling had an outstanding obligation for a period before 2012. The court also found that Pulham incurred fees paid to the Office of Recovery Services (ORS) due to Kirsling's "failure to timely pay his child support obligation." Because Kirsling had not been "consistently responsible for payments until ORS intervened," the court agreed with Pulham that Kirsling should reimburse her for the ORS fees. Accordingly, the court ordered Kirsling to pay Pulham for past-due child support and ORS fees.

¶12   On unreimbursed child care expenses, the trial court found that Pulham had shown that Kirsling had not paid his share of some expenses. The court ordered Kirsling to pay Pulham those expenses.

¶13   Finally, on the allegations of contempt of court, the trial court found that "insufficient evidence was presented at trial to warrant sanctions for either party." Thus, the court dismissed all charges of contempt.

---

2. This child support worksheet is not part of the record on appeal.

*The Motion for a New Trial*

¶14 Kirsling moved for a new trial pursuant to rule 59(a) of the Utah Rules of Civil Procedure.[3] The motion was accompanied by an unsworn document signed by his attorney that purported to be Kirsling's affidavit. As relevant here, Kirsling challenged the trial court's decisions regarding child support and custody as well as the amounts Kirsling owed to Pulham for past-due child support and child care expenses.

¶15 With respect to the amounts owed to Pulham for past-due child support and child care expenses, Kirsling contended that, under rule 59(a)(4), he had newly discovered evidence that he could not have produced at trial. Referring to Pulham's testimony that she did not receive a particular payment, he asserted that post-trial he was "able to obtain a photocopy of the cashed money order that was presented to [Pulham's] counsel as settlement for the financial issues of the case" and that the new information affected the amounts he owed Pulham.

¶16 In denying the motion, the trial court began by characterizing the purported affidavit as "an argument by [Kirsling's] counsel, complaining generally of the failure of the Court to find in [Kirsling's] favor." The court then rejected Kirsling's newly discovered evidence argument, explaining that

---

3. Rule 59(a) provided, in relevant part, that "a new trial may be granted to . . . any . . . part[y] and on all or part of the issues, for any of the following causes[:] . . . (a)(4) [n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial; . . . (a)(6) [i]nsufficiency of the evidence to justify the verdict or other decision"; or "(a)(7) [e]rror in law." Utah R. Civ. P. 59(a) (2014). Because rule 59 has been amended, we cite the version in effect at the time Kirsling filed his motion.

Kirsling had not established "whether or why he was unable to obtain this evidence prior to trial" and also had not shown that "the introduction of the evidence would have resulted in a different trial outcome."[4]

¶17    Kirsling raised another argument under rule 59(a)(6), attacking the court's determination that Pulham's gross monthly income was $30 for child support purposes. Kirsling argued that the evidence was insufficient because the court did "not show[] why Ms. Pulham's income was not calculated" based on her employment potential and probable earnings pursuant to a statute governing the imputation of income. Kirsling asserted this same argument as an error of law under rule 59(a)(7).

¶18    The court rejected Kirsling's arguments. It explained that Utah Code section 78B-12-203(7) dictates the circumstances under which the trial court may impute income and gives discretion to the court to impute under those certain circumstances. The court then explained that it "did not impute income to [Pulham]" and that the application of this statute was "not the basis for a complaint of 'insufficient evidence'" under

---

4. Kirsling also cited rule 59(a)(3), making a related argument that he was surprised by Pulham's assertion at trial that she had not received the settlement payment and that it was "not prudent to expect [him to] guard against" that assertion. While Kirsling briefly refers to rule 59(a)(3) in his statement of the issues on appeal, he makes no argument based on surprise and instead focuses this portion of his appeal on rule 59(a)(4) and his contention of newly discovered evidence. Accordingly, we do not address whether the trial court abused its discretion in not granting a new trial under rule 59(a)(3). *See Wintle-Butts v. Career Service Review Office*, 2013 UT App 187, ¶ 20, 307 P.3d 665 (refusing to consider an undeveloped and inadequately briefed issue).

rule 59(a)(6). Similarly, the court concluded that, in relation to rule 59(a)(7), it had not committed an error of law, because it had "exercised its discretion in determining not to impute income to [Pulham], something the statute authorizes it to do."

¶19 Concerning custody, Kirsling contended that, under rule 59(a)(7), the trial court erred when it did not follow the recommendations of the custody evaluator. In particular, he stated that the court failed to provide "a detailed and clear finding" explaining why it did not adopt the custody evaluator's recommendation. The court rejected this argument as well, maintaining that it had "articulated the reasons for its decision regarding custody."

¶20 The trial court denied the motion for a new trial on June 17, 2015. Kirsling filed a timely notice of appeal, giving rise to the First Appeal. In his notice of appeal, Kirsling stated that he thereby appealed "the final Decree of Divorce . . . entered in this matter on June 17, 2015," and that the appeal was "taken from such parts of the judgment as follow": Paragraph 3 regarding child support calculation; Paragraph 4 regarding child support, ORS fees, and child care expenses; and Paragraph 8 regarding contempt.

*The Petition to Modify the Amended Decree*

¶21 On the same day he filed the First Appeal, Kirsling petitioned the trial court for a modification of the Amended Decree. Specifically, Kirsling asserted that "[a] significant change of circumstances has occurred as a result of [his] recent relocation to Stansbury Park, Utah, which is located approximately 15 minutes of driving time from his home to the home of [Pulham]." Kirsling further asserted that at the time the trial court entered the Amended Decree he lived approximately forty-five minutes away from Pulham and that "[t]his distance affected the Court's awarding of parent time for both the

overnight schedules, school choices and the midweek parent time determinations." Because the long "commute time no longer exist[ed]," Kirsling requested that the court change the schedule to "fifty-fifty," essentially asking to have Child spend every other week with him.[5]

¶22    Pulham responded by filing a motion to dismiss the petition to modify. Although she did not dispute that Kirsling had relocated, she contended that Kirsling's move from Taylorsville to Stansbury Park did "not represent a change of circumstances sufficient to modify the controlling order," because it did not affect her "parenting ability" and the "functioning of the current custodial relationship."

¶23    A court commissioner heard the matter and recommended that the trial court deny Pulham's motion to dismiss. Pulham objected to that recommendation, and the trial court ultimately resolved the petition to modify on its merits. The court observed that it had "considered the distance the minor child would be subjected to traveling" when entering its custody and parent-time orders in the Amended Decree, but it expressed concern that Kirsling's "stop" in Stansbury Park would be "brief," in light of his "somewhat migratory history." The court also expressed concern that, "given the timing of the move and the petition itself, [Kirsling] made this move solely to create a change in circumstances in an effort to succeed in modifying the decree."

¶24    Although Kirsling's relocation closer to Pulham "benefits all parties, including the minor child," the court concluded that the "move, in and of itself, is wholly insufficient to create a sufficient change of circumstances to warrant reconsideration" of

---

5. The parties seem to agree that Kirsling was trying to move from 40% overnights to 50% overnights.

the Amended Decree, and it denied Kirsling's petition to modify. Kirsling filed another notice of appeal, which triggered the Second Appeal.

ANALYSIS

I. The First Appeal

¶25 Kirsling raises three issues in the First Appeal. First, he contends that the trial court erred in calculating "Pulham's income at $30 per month for child support purposes." Second, he contends that it erred in denying his motion for a new trial on his claim of newly discovered evidence related to child care expenses. Third, he contends that the trial court erred in deviating "from the recommendations of the court-appointed custody evaluator without making any specific findings on the record as to its deviation." Before we reach the merits of these contentions, however, we must consider whether Kirsling's notice of appeal vested this court with jurisdiction to consider and address these issues.

A.     The Scope of This Court's Jurisdiction

¶26 As a threshold matter, we first consider Pulham's argument that this court lacks jurisdiction to review certain issues on appeal. Pulham argues that "Kirsling's notice of appeal invokes this Court's jurisdiction over only some of the issues he has argued in his brief." According to Pulham, "Kirsling's notice of appeal references only the decisions in the Amended Decree relating to child support, a monetary judgment, and the dismissal of contempt charges," and "[b]ecause [his] notice of appeal does not reference the district court's custody award or the . . . denial of [his] motion for a new trial, this Court lacks appellate jurisdiction over issues related to those decisions." Kirsling counters that a notice of appeal's "designation of the

specific parts [of an order or judgment] does not waive the appeal of the whole order or judgment" and that therefore this court "has jurisdiction over all of the issues raised on appeal . . . , as well as the issues concerning the post-trial motion" for a new trial.

¶27    "Whether appellate jurisdiction exists is a question of law . . . ." *Goggin v. Goggin*, 2011 UT 76, ¶ 16, 267 P.3d 885 (quotation simplified). Likewise, we "determine whether a Notice of Appeal is adequate to grant this court jurisdiction as a matter of law." *State v. Valdovinos*, 2003 UT App 432, ¶ 13, 82 P.3d 1167 (quotation simplified).

¶28    The Utah Supreme Court has "emphasized that the object of a notice of appeal is to advise the opposite party that an appeal has been taken from a specific judgment in a particular case . . . [because the opposing party] is entitled to know specifically which judgment is being appealed." *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 7, 977 P.2d 474 (quotation simplified). Rule 3(d) of the Utah Rules of Appellate Procedure dictates the content of a notice of appeal: "The notice of appeal . . . shall designate the judgment or order, or part thereof, appealed from . . . ." Utah R. App. P. 3(d*); see also U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303, ¶ 11, 990 P.2d 945. This requirement "is jurisdictional." *Jensen*, 1999 UT 10, ¶ 7. As a result, an "order not identified in the notice of appeal falls beyond [this court's] appellate jurisdiction." *In re adoption of B.B.*, 2017 UT 59, ¶ 106.

¶29    "[W]here the notice of appeal sufficiently identifies the final judgment at issue and the opposing party is not prejudiced, the notice of appeal is to be liberally construed." *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 14, 199 P.3d 957 (quotation simplified). Put another way, "[w]here the appealing party's intent is clear and the appellee suffers no prejudice, the notice of appeal is sufficient." *Id.* ¶ 15.

¶30   As noted above, rule 3(d) requires that the notice of appeal "designate the judgment or order, *or part thereof,* appealed from." Utah R. App. P. 3(d*)* (emphasis added). If an appellant has adequately designated the judgment or order appealed from, we do not read the rule's language as also requiring the appellant to designate the "part thereof." *See id.* But where an appellant chooses to identify the specific parts of a judgment subject to the appeal and gives notice of its intent to appeal only those parts of a particular judgment, our jurisdiction is limited by that representation. *Cf. In re adoption of B.B.*, 2017 UT 59, ¶ 106. In other words, "our jurisdiction is limited by the wording of the notice." *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 135 (2d Cir. 2016) (quotation simplified) (holding that the language of a notice of appeal limits an appellate court's jurisdiction to those issues expressly identified in the notice);[6] *see also Muller v. Holmes*, 353 F. App'x 664, 666 (2d Cir. 2009) (same); *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977) ("When an appeal is taken from a specified judgment only *or from a part of a specified judgment*, the court of appeals acquires thereby no jurisdiction to review other judgments *or portions thereof not so specified* or otherwise fairly to be inferred from the notice as intended to be presented for review on the appeal." (emphasis added)).

¶31   Here, Kirsling's notice of appeal for the First Appeal states that he appeals "the final Decree of Divorce . . . entered in

---

6. Substantively similar to Utah Rule of Appellate Procedure 3(d), the federal counterpart requires that a party designate in its notice of appeal "the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B); *see also Drew v. Lee*, 2011 UT 15, ¶ 16 & n.22, 250 P.3d 48 (indicating that where federal court procedural rules are substantively similar to Utah's rules, we may look to interpretations of the federal rules for guidance and as persuasive authority).

this matter on June 17, 2015," and specifies that the appeal "is taken from such parts of the judgment as follow":

> 1) Paragraph 3 regarding child support calculation;
>
> 2) Paragraph 4 wherein Mr. Kirsling was ordered to pay . . . child support and ORS fees and . . . child care expenses; and
>
> 3) Paragraph 8 wherein all charges of Contempt are dismissed.

The Amended Decree was entered on November 4, 2014. The order denying Kirsling's motion for a new trial was entered on June 17, 2015. When the notice of appeal is considered in context, its reference to "the final Decree of Divorce" manifests Kirsling's intent to appeal from the Amended Decree, and its reference to an order "entered in this matter on June 17, 2015," manifests his intent to appeal from the order denying his motion for a new trial. *See Speros v. Fricke*, 2004 UT 69, ¶ 15, 98 P.3d 28 (interpreting a notice of appeal as an appeal from a January 15 order despite its reference to a nonexistent January 11 order because the appellant's intent to appeal the former order was evident from the context). We thus conclude that Kirsling's notice of appeal sufficiently designates the Amended Decree and the order denying the motion for a new trial as "the judgment[s] or order[s] . . . appealed from." Utah R. App. P. 3(d).

¶32 But the notice of appeal does more; it also designates the "part[s] thereof" to be appealed. *See id.* It does so by stating that the appeal "is taken from such parts of the judgment as follow": Paragraph 3 regarding child support; Paragraph 4 regarding past-due child support, ORS fees, and child care expenses; and Paragraph 8 regarding contempt. Because the Amended Decree has paragraph numbers and subject matters that correspond to those mentioned in the notice of appeal, we read the notice of

appeal's references to specific paragraphs as referring to Paragraphs 3, 4, and 8 of the Amended Decree. We thus construe the notice of appeal as manifesting Kirsling's intent to contest on appeal only the issues of child support, past-due child support, ORS fees, child care expenses, and contempt. In contrast, the notice of appeal does not convey Kirsling's intent to appeal issues related to the custody evaluation or the parenting plan—issues that were resolved in other paragraphs of the Amended Decree that are not cited in the notice of appeal. By expressly identifying the parts of the trial court's ruling from which the appeal was taken, Kirsling manifested an intent not to appeal the other parts of the trial court's Amended Decree and its related order denying his post-trial motion.[7]

¶33    In sum, because Kirsling's notice of appeal identifies the specific parts of the trial court's Amended Decree that he contests on appeal, our jurisdiction is limited to those particular parts. To be precise, this court has jurisdiction to review issues related to "the child support calculation"; the order directing Kirsling to pay ORS fees, past-due child support, and child care expenses; and the dismissal of the contempt charges.[8] The issues

---

7. The same intent is also manifest in Kirsling's petition to modify the Amended Decree, which he filed contemporaneously with his notice of appeal. In his motion, he advised the trial court that "[a] Notice of Appeal on three sections of the Decree of Divorce is being filed, but none of these sections pertain to or affect this Petition to Modify regarding parent time." In his supporting affidavit, Kirsling further "emphasize[d] that none of the items that [he] . . . [n]oticed [for appeal] pertain to the issues" raised in his petition to modify the trial court's determinations regarding parent-time.

8. Despite the fact that the issues related to the ORS fees and the contempt charges are within our jurisdiction, Kirsling has not

(continued…)

in his opening brief that are not identified in his notice of appeal—relating to the custody evaluation and the parenting plan—are outside this court's jurisdiction. *Cf. In re adoption of B.B.*, 2017 UT 59, ¶ 106 (determining that the supreme court had no jurisdiction to review a consent order, where that order was not mentioned in the notice of appeal and where that order was a distinct final judgment from another final judgment that was properly identified in the notice of appeal). Having identified those issues that are properly before this court in the First Appeal, we now address their merits.

B.      Calculation of Income for Child Support Purposes

¶34     Kirsling contends that the trial court erroneously calculated Pulham's monthly income for child support purposes as $30, asserting that "[e]ither the $30 per month finding regarding Pulham's income was supported by insufficient evidence, or the trial court erroneously imputed income to her absent proper procedure." In his view, Pulham's income should have been imputed at a much higher amount. He thus asserts that the trial court's error resulted in "an excessive award of child support to Pulham" and asks us to reverse and remand for the trial court to "determine the income based on [Pulham's] historical income."

¶35     Because trial courts have broad discretion to award child support, we will not disturb such a decision "absent an abuse of discretion." *Roberts v. Roberts*, 2014 UT App 211, ¶ 7, 335 P.3d 378. "That means that as long as the court exercised its discretion within the bounds and under the standards we have set and has supported its decision with adequate findings and conclusions,

---

(…continued)

briefed on appeal any challenge to the trial court's decisions on those issues. Consequently, we do not consider them further.

we will not substitute our judgment for the trial court's." *Id.* (quotation simplified). Likewise, we review the trial court's denial of Kirsling's motion for a new trial for abuse of discretion. *See Wall v. Wall*, 2007 UT App 61, ¶ 8, 157 P.3d 341. We will set aside the trial court's factual findings only if they are clearly erroneous. *Kimball v. Kimball*, 2009 UT App 233, ¶ 14, 217 P.3d 733 ("A trial court's factual determinations are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." (quotation simplified)).

¶36 We begin with Kirsling's contention that the trial court's finding regarding Pulham's income is clearly erroneous because it lacks evidentiary support. On this point, we agree that no evidence adduced at trial supported the conclusion that, at the time of trial, Pulham had a monthly income of $30. It was undisputed that Pulham was unemployed and cared for her young children full-time. The trial court, however, did not purport to base its determination of income on the testimony or other evidence at trial. Rather, the court twice stated that its income determination was based on the parties' "stipulated monthly gross incomes."

¶37 Kirsling does not acknowledge the trial court's explanation that its income determination was not based on evidence but on a stipulation by the parties. *See Duchesne Land, LC v. Division of Consumer Prot.*, 2011 UT App 153, ¶ 8, 257 P.3d 441 (requiring an appellant to address the basis for the trial court's ruling). Nevertheless, we acknowledge that the referenced stipulation does not appear to be in the record on appeal. And, when asked in oral argument to explain the origin of the $30 figure, counsel for Pulham admitted that he did not know.

¶38 But even assuming the court erred in determining that the parties stipulated to Pulham's monthly income in the amount of

$30, we conclude that the error would not warrant reversal. "[W]e will not reverse a judgment merely because there may have been [an] error; reversal occurs only if the error is such that there is a reasonable likelihood that, in its absence, there would have been a result more favorable to the complaining party." *Portfolio Recovery Assocs., LLC v. Migliore*, 2013 UT App 255, ¶ 15, 314 P.3d 1069 (quotation simplified); *see also* Utah R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). As noted above, the undisputed evidence at trial showed that Pulham was unemployed and had no income. Thus, if the court erred in attributing some income to her based on a stipulation, that error arguably favored Kirsling. At the least, Kirsling has not demonstrated that if Pulham's income was decreased from $30 to $0 that his child support obligation would be reduced. As a result, we will not reverse the trial court on this basis.

¶39   We further conclude that Kirsling has not established that the alleged error of which he complains entitles him to his requested relief—a new trial with the opportunity to request the imputation of additional income to Pulham based on evidence not presented at trial. Kirsling did not move for a new trial on this issue under rule 59(a)(4) of the Utah Rules of Civil Procedure based on a claim of newly discovered evidence, and he has not shown that the court committed an error of law by not imputing income to Pulham based on her anticipated earnings or the federal minimum wage such that a new trial would be warranted under rule 59(a)(7). *See* Utah Code Ann. § 78B-12-203(7) (LexisNexis 2012) (allowing under certain circumstances for the imputation of income for child support purposes based on employment potential and anticipated earnings or the federal minimum wage for a forty-hour work

week).[9] *See generally* Utah R. Civ. P. 59(a)(4), (a)(7) (2014) (permitting the court to grant a new trial on the grounds of newly discovered evidence or errors in law).

¶40   Income in a contested case may be imputed under Utah Code section 78B-12-203 only if the court "enters findings of fact as to the evidentiary basis for the imputation." Utah Code Ann. § 78B-12-203(7)(a). Where income is imputed, it "shall be based upon [the parent's] employment potential and probable earnings," *id.* § 78B-12-203(7)(b), or, where a parent "has no recent work history" or an unknown occupation, "income shall be imputed at least at the federal minimum wage for a 40-hour work week," *id.* § 78B-12-203(7)(c). Moreover, income "may not be imputed" if certain conditions exist, including where "the reasonable costs of child care for the parents' minor children approach or equal the amount of income the custodial parent can earn." *Id.* § 78B-12-203(d)(i).

¶41   The subject of imputation of income was not raised until Kirsling's post-trial rule 59 motion. And, as Kirsling concedes on appeal, none of the factors relevant to imputing income to Pulham based on her employment potential and probable earnings were discussed, and information about those factors was not placed on the record. In fact, the only evidence at trial arguably relevant to the imputation of income was that Pulham worked for a time but that she "barely made anything" after paying for child care. Given that the record contains no evidence regarding Pulham's employment potential and probable earnings, and given that her undisputed testimony was that the cost of child care approached the amount of income she previously had earned, *see id.*, we cannot conclude that the trial

---

9. This statutory provision was recently amended. We cite the version in effect when the trial court determined Kirsling's child support obligation.

court committed legal error in not imputing income to Pulham under section 78B-12-203(7)(b).

¶42 Similarly, Kirsling's argument that the trial court should have imputed income to Pulham under Utah Code section 78B-12-203(7)(c) at the federal minimum wage also fails. Not only did Kirsling not ask for imputation under this provision at trial or in his post-trial motion, but he now admits that "Pulham does have recent work history." Thus, he implicitly concedes that imputation under that section would not have been appropriate. *See id.* § 78B-12-203(7)(c) ("If a parent has *no* recent work history or a parent's occupation is unknown, income shall be imputed at least at the federal minimum wage for a 40-hour work week." (emphasis added)). We therefore affirm the trial court's child support order and its denial of Kirsling's related rule 59 motion.[10]

C.     Newly Discovered Evidence Related to Child Care Expenses

¶43 Kirsling next contends that the trial court erred in denying his motion for a new trial when it refused to consider newly discovered evidence relating to past-due child care expenses. According to Kirsling, he "had been misinformed at the time of trial that he could not obtain evidence to show that Pulham had received and cashed" a money order that he had

---

10. In his motion for a new trial, Kirsling also argued that the child support order should have given him credit for other children in his home. The trial court rejected that argument. On appeal, Kirsling refers to these facts, but he does not present any related analysis supported by citations to the record and legal authority. *See* Utah R. App. P. 24(a)(9) (2016). He therefore has not carried his burden to show error in the court's decision on this point.

given to her counsel, but he was able to obtain a copy of that cashed money order after trial. Kirsling asserts that he undertook due diligence but that the misinformation given to him was "outside of his control." He further asserts that the copy of the cashed money order would "affect[] the financial settlement ordered by the court" and that therefore the court should have granted him a new trial.[11]

¶44　Rule 59(a)(4) provides that a new trial may be granted if a party shows the existence of material and "[n]ewly discovered evidence, . . . which he could not, with reasonable diligence, have discovered and produced at the trial." Utah R. Civ. P. 59(a)(4) (2014). Such a motion "shall be supported by affidavit." *Id.* R. 59(c). "In deciding whether to grant a new trial, the trial court has some discretion, and we reverse only for abuse of that discretion." *Wall v. Wall*, 2007 UT App 61, ¶ 8, 157 P.3d 341 (quotation simplified).

¶45　The trial court denied Kirsling's rule 59 motion based on his claim of newly discovered evidence. The court reasoned that he had not established "whether or why he was unable to obtain this evidence prior to trial" and had not shown that "the introduction of the evidence would have resulted in a different trial outcome."

---

11. Kirsling purports to challenge the trial court's calculation of the amounts he owed Pulham for past-due child support and child care expenses, asserting that the court erred "in determining the financial award" and "in denying the financial settlement or offsetting amounts owed to Pulham." But because his related briefing focuses on the denial of his rule 59 motion and does not attempt to show other error in the Amended Decree's calculation of the amounts Kirsling owed to Pulham, we construe his argument as pertaining solely to the court's denial of the rule 59 motion.

¶46   Kirsling's argument fails because he has not addressed the trial court's rationale for denying his motion. *See Duchesne Land, LC v. Division of Consumer Prot.*, 2011 UT App 153, ¶ 8, 257 P.3d 441 (explaining that an appellant must address and show error in the basis for the trial court's ruling). Moreover, though Kirsling recites the factual basis for his claim that evidence was newly discovered, he cites no evidentiary basis for his assertions that he could not obtain the relevant evidence prior to trial. Aside from his rule 59 motion and memorandum, the only material that Kirsling presented to the trial court in support of his newly discovered evidence claim was a document signed by his attorney purporting to be Kirsling's affidavit. Rule 59(c) requires that a newly discovered evidence claim be "supported by affidavit," Utah R. Civ. P. 59(c) (2014), but, as the trial court correctly noted, the purported affidavit is "more accurately characterized as an argument by [Kirsling's] counsel." Given Kirsling's failure to provide the trial court with evidentiary support, the court did not exceed its discretion in denying Kirsling's motion.

## II. The Second Appeal

¶47   The Second Appeal centers on the trial court's denial of Kirsling's petition to modify the Amended Decree. We first address Kirsling's sole argument on appeal regarding that decision, and then address the parties' requests for an award of attorney fees incurred in the Second Appeal.

### A.   The Petition to Modify

¶48   Kirsling argues that the trial court "applied an incorrect heightened standard to arbitrarily foreclose modification" on the basis that "a substantial change of material circumstances had not occurred." According to Kirsling, he was asking for a modification of parent-time, and the trial court therefore should have applied "a less strict" standard.

¶49   "We generally review the determination to modify a divorce decree for an abuse of discretion. However, to the extent that determination is based on a conclusion of law, we review it for correctness." *Snyder v. Snyder*, 2015 UT App 245, ¶ 9, 360 P.3d 796 (quotation simplified).

¶50   The Utah Supreme Court has recognized that the threshold "change in circumstances required to justify a modification of a divorce decree varies with the type of modification sought." *Haslam v. Haslam*, 657 P.2d 757, 758 (Utah 1982). As a general rule, modifying a custody order requires a showing of a substantial and material change in circumstances. *Doyle v. Doyle*, 2011 UT 42, ¶¶ 24–25, 258 P.3d 553. In contrast, altering parent-time arrangements requires a showing of changed circumstances, but that "showing does not rise to the same level as the substantial and material showing required when a district court alters custody." *Jones v. Jones*, 2016 UT App 94, ¶ 10, 374 P.3d 45 (citing *Becker v. Becker*, 694 P.2d 608, 609, 611 (Utah 1984); *Haslam*, 657 P.2d at 758); *accord Blocker v. Blocker*, 2017 UT App 10, ¶¶ 12–14, 391 P.3d 1051.

¶51   Contrary to Kirsling's contention, the trial court did not apply a "substantial change of material circumstances" standard. The court ultimately stated that Kirsling's move was "insufficient to create a *sufficient* change in circumstances to warrant reconsideration of the Court's Order."[12] (Emphasis added.) And while the court described the standard as "high,"

---

12. Kirsling points to this statement as evidence that the court applied the "substantial change in material circumstances" standard to foreclose modification. But this statement cannot be read in isolation. As we explain below, because the court actually reached the merits of Kirsling's petition, we cannot agree that the court refused to reconsider its prior order based on an unmet threshold.

nowhere in its order did it identify the "substantial change of material circumstances" standard as the one that must be met.

¶52 Even more importantly, however, the trial court did not arbitrarily refuse to hear Kirsling's petition based on an application of a standard. Rather, the court considered the merits of Kirsling's petition. The court accepted as true that Kirsling moved to Stansbury Park after the entry of the Amended Decree, but it rejected his assertion that the court's custody and parent-time orders were driven primarily by the fact that Kirsling lived in Taylorsville at the time of trial. The court expressed concern that Kirsling's "stop in [Stansbury Park would] be . . . brief," given Kirsling's "migratory history." The court also expressed concern that the move was motivated to create a change of circumstances to justify a modification of the Amended Decree. Thus, rather than reject Kirsling's petition on the basis that a move by one parent fails to constitute a "substantial change in material circumstances," the court considered its merits and determined why Kirsling's move, under the relevant circumstances, did not warrant modification of the court's order.

¶53 But even assuming the court's order could be construed as having applied a "substantial change in material circumstances" standard, Kirsling's argument would fail for lack of preservation. "To preserve an argument for appellate review, the appellant must first present the argument to the district court in such a way that the court has an opportunity to rule on it." *Gowe v. Intermountain Healthcare, Inc.*, 2015 UT App 105, ¶ 7, 356 P.3d 683 (quotation simplified). "We generally do not address unpreserved arguments raised for the first time on appeal." *Id.*

¶54 Kirsling never alerted the court to his argument that his petition requested a type of modification that should be based on something less than a substantial and material change of circumstances. Instead, he practically invited the court to apply the heightened standard. Kirsling premised his petition on the

occurrence of "[a] significant change in circumstances," and in his briefing he referred to a move to a new community as an example of a "material and substantial change[]" justifying the modification of a custody award. These submissions—particularly the suggested standard—arguably invited the court to apply the standard about which Kirsling now complains. *See Kerr v. City of Salt Lake*, 2013 UT 75, ¶ 44, 322 P.3d 669 (stating that under the doctrine of invited error, "a litigant may not induce the trial court to make a ruling and then argue on appeal that the ruling was in error"). In any event, Kirsling did not preserve his argument that the court erred in applying the substantial change of circumstances standard rather than "a less strict" standard "for a change in parent time." *See Baumann v. Kroger Co.*, 2017 UT 80, ¶¶ 17–18 (deeming an argument unpreserved where the appellant did not argue for the more forgiving standard she advocated for on appeal and where she arguably invited the district court to apply the less forgiving standard). Thus, we will not now reverse the trial court's denial of his petition to modify on that basis. *See Gowe*, 2015 UT App 105, ¶ 9.

B.     Attorney Fees on Appeal

¶55     Both parties request an attorney fees award pursuant to rule 33 of the Utah Rules of Appellate Procedure. Rule 33 allows this court, if it determines that an appeal is "either frivolous or for delay," to "award just damages, which may include . . . costs . . . and/or reasonable attorney fees, to the prevailing party." Utah R. App. P. 33(a). "[P]arties seeking attorney fees under rule 33 face a high bar," and the Utah Supreme Court has directed that such sanctions are warranted only in "egregious cases." *Porenta v. Porenta*, 2017 UT 78, ¶ 51 (quotation simplified). We conclude that this case does not present an egregious case and therefore deny the parties' requests for attorney fees.

CONCLUSION

¶56   In the First Appeal, we conclude that only two of the three issues that Kirsling argues on appeal were identified in his notice of appeal and are properly before this court. On the merits of those two issues, we conclude that Kirsling's challenge to the trial court's calculation of income fails and he has not shown that the trial court erred in denying his motion for a new trial based on his claim of newly discovered evidence. As for the Second Appeal, we conclude that the trial court did not err in denying Kirsling's petition to modify the Amended Decree. Accordingly, we affirm the trial court's decisions in both appeals.

———————